THE PEOPLE, *ex rel.* Crandall, *vs.* THE OVERSEERS OF THE POOR OF THE TOWN OF ONTARIO.

The mother of an alleged bastard, who is a married woman, and whose husband was living at the time of the alleged illicit intercourse, and the birth of the child, although she is, from the necessity of the case, a competent witness to prove the illicit intercourse, and who is in fact the father of the child, is not competent as a witness to establish the non-access of the husband; nor his absence from the state; nor any fact which may be proved by other testimony.

Although the decisions, upon the question how far the supreme court, upon a

The People v. Overseers of Ontario.

common law certiorari, will look into the return, to review and correct errors in respect to the admission of evidence, when the court below were acting within their jurisdiction, are somewhat conflicting, the weight of authority is against the right to review erroneous decisions in admitting or rejecting evidence, where the evidence itself is proper, and the objection lies only to the competency of the witness to testify in the cause or proceeding, and other errors of like character.

The exception to this rule seems to be confined exclusively to cases where the common law certiorari is given by statute, and the court is expressly authorized to correct all errors in the proceedings and judgment.

It is proper for the court below, and its duty, to return enough of the proceedings before them to show that they had jurisdiction not only of the subject matter of the inquiry, and of the person proceeded against, but also that some proof was made, which had at least a tendency to establish the material allegations in issue.

To that extent it is the duty of the supreme court to look into the return. And if, on such examination, it appears that the court had no jurisdiction of the subject matter, or that there was no evidence legally tending to establish the main facts which could alone authorize the judgment in either case, the supreme court will set the judgment aside.

In such cases the supreme court does not deliberate upon the weight and just force of evidence, but determines merely whether there is any evidence whatever.

In regard to all matters pertaining to the jurisdiction of the court below, to entertain the proceeding, or to render the judgment or order brought up by the writ, the return is open to scrutiny, and the decision to correction.

An order of filiation, in a case of bastardy, cannot be made upon mere hearsay evidence, of the continued absence of the husband of the mother, from the state.

CERTIORARI to the court of sessions of Wayne county, to certify their proceedings, &c. upon an appeal from an order of filiation made by two justices in a case of alleged bastardy. The return of the sessions embraced all the proceedings and all the evidence taken by them on the hearing of the appeal. The facts necessary to raise the questions of law involved by the decision in the court below, which it was proposed to review, all appeared by the return, and are briefly these: On the trial of the appeal at the sessions, March 5th, 1852, the counsel for the overseers called Mary Ann Hollenback, the mother of the alleged bastard, and offered her as a witness to testify generally in the cause. Whereupon the relator's counsel demanded that she should be first sworn upon her voir dire, to answer such questions as

should be put to her touching her competency as a witness; and offered to prove by her on her voir dire, that for more than a year previous to the birth of the child, she had been and still continued to be a married woman; and that her husband was still living; and insisted that a married woman was not a competent witness to prove the bastardy of her child, begotten and born during the lifetime of the husband. This demand and offer were overruled by the court, and the witness was thereupon sworn in chief; and, under objection, testified to an act of illicit intercourse with the relator; to the consequent conception; to the birth of the child, on the 14th day of September, 1851, in the town of Ontario, and that the relator was its father. Upon her cross-examination, she testified, amongst other things, that before her connection with the relator, she was married to one Milo Hollenback; who was still living at the birth of the alleged bastard child. Upon her redirect examination, the counsel for the overseers asked the question, How long have you been absent from your husband? This question was objected to by the counsel for the relator; the court overruled the objection, and the witness answered, "Three years last November." The counsel for the overseers then asked, How long since you saw him? This question was also objected to by the relator; the court overruled the objection, and the witness answered, "The last time, was two years ago last August." She was then asked, Has he had access to your person within the three years last November? This question was also objected to by the relator's counsel; the court overruled the objection, and the witness answered, "He has not." She then added as follows: "He has been in Michigan. I know nothing about his being in Michigan, except hearsay. I last saw him, two year's ago last August, at my father's. I have not seen him since then." She also testified, "I have not known of my husband being in the town of Ontario, since the time I saw him at my father's, two years ago last August. I do not know of my husband being in this state since I saw him at my father's." Upon a cross-examination on this point, by the relator's counsel, she said, "I heard my husband was in Walworth, after I saw him at father's. I don't

The People *v.* Overseers of Ontario.

recollect stating to the magistrates that it was as late as October that I heard of his being in Walworth. I was not out of the town of Ontario, from the 14th day of December till the birth of my child. I heard nothing of my husband being in Walworth, while I was at Marion." All the testimony of this witness, on the subject of the legitimacy of the child, and the non-access of her husband, was objected to by the relator's counsel, and the objection was overruled. This was all the testimony that was given, relating to the absence of the husband from the state, during the year next preceding the birth of the child, or to the non-access of the husband. The relator was convicted by the sessions; and the court thereupon made the usual order of filiation, now sought to be set aside and vacated.

*T. Hastings*, for the relator. I. When the mother of an alleged bastard is a married woman, proof of sexual intercourse with a person other than her husband, within the proper time of gestation, and proof of non-access by the husband during the same period, is not sufficient, under the laws of this state, to bastardize such issue. A child, begotten under such circumstances, may, *under the laws of descent, be illegitimate;* but unless the husband of its mother "has continued absent from the state for one whole year previous to its birth, separate from its mother, and leaving her during that time continuing and residing in this state," such child, no matter by whom begotten, is not a bastard. (1 *R. S.* 822, *3d ed.*) It is necessary to show that the husband of its mother *continued* absent from the state for *one whole year* previous to its birth; that he left the mother, continuing and residing in this state, for the whole of the same period, separate from the husband; or, that its mother and her husband were living separately under a decree of separation pronounced by competent authority. In the present case, there is no evidence that the husband continued absent from the state for one whole year previous to the birth; or that the mother and her husband were living separate and apart under a decree pronounced by competent authority. The court,

therefore, erred in deciding that the child was a bastard, and in affirming the order of the justices.

II. If the court should be of opinion that the relator's first point is not well taken, and that want of access on the part of the husband, connected with proof of the fact of sexual intercourse by the mother with another person at about the time of the conception, is necessary to bastardize the child, it is then insisted that the mother, being a married woman, is not a competent witness to bastardize her offspring. (*See* 1 *R. S.* 826, § 20, 3*d ed. ;* 1 *Greenl.* § 345, *and authorities there cited.*) The doctrine laid down by Greenleaf, § 345, that the mother, under such circumstances, is incompetent to prove the non-access of the husband, is quoted by Bronson, J. in *Ratcliff* v. *Wales,* (1 *Hill,* 63, 65.) The rule undoubtedly is, that a married woman cannot, as a witness, bastardize her offspring. It is against public policy, and would tend to the dissolution of marriages, and break up the peace of families. The very idea is unnatural. The statute only provides that after the bastardy is established, she may designate the father, *ex necessitate ;* and such was the common law. The court, therefore, erred in a matter of law, when it overruled the application to put her upon her *voir dire* to prove the marriage. The court also erred in allowing her to testify to adulterous intercourse with the relator, before proof of bastardy ; and in allowing her to testify either upon the question of the husband's absence from the state, or upon the question of access.

III. But it may be said that this being a common law certiorari, the court below should not have returned the evidence ; and that this court cannot look into the evidence returned, or into the rulings of the court. Such is not the law. The evidence is properly here, and this court is bound to look into the rulings of the court below as to the competency or admissibility of the evidence, and as to its sufficiency, as questions of law. In the case of *Sweet* v. *The Overseers of Clinton,* (3 *John.* 23,) Judge Thompson says : " If the sessions do not return to the certiorari all the facts which were before them, and which are necessary to appear in order to judge of the law applicable to

the case, the practice I apprehend to be for this court to order the sessions to return such facts." He cites as authority 1 *Term, Rep.* 775 ; *Burr. S. C.* 697. The same principle is recognized in the *Overseers of Brookhaven* v. *Overseers of Southold,* (2 *Cowen,* 575.) In all summary convictions upon penal statutes, the return must state the evidence. (*Per Cowen, J.,* 20 *Wend.* 103.) These cases certainly imply, if they do not decide, the doctrine now contended for. But the case in 7 *Wend.* 359, shows that this court do, in bastardy cases as well as in some other, look into the evidence, and correct the rulings of the court below. The bastardy was not proved in the court below by competent evidence. The conviction and order should, therefore, be reversed, upon the ground that the sessions, without such proof, had no jurisdiction to make the order. The case of *Thayer* v. *Overseers of Hamilton,* (5 *Hill,* 443,) virtually recognizes this principle. The court, in that case, reviewed a decision upon a plea in bar. How does the principle of that case differ from the present one ? If this be not law, then the present case is remediless.

*W. F. Aldrich,* for the defendants. I. This being a common law certiorari, the court below should not have returned the evidence. This court will examine the return no further than to ascertain if the inferior tribunal has kept within the limits of its jurisdiction. (2 *Hill,* 9. *Id.* 14, *and cases there cited.*) The admission of improper evidence, or rejection of proper evidence by the court below, cannot be made the ground of disturbing the proceedings. (7 *How. Pr. Rep.* 156.) II. There was some evidence that the husband of the mother of the alleged bastard had continued absent from the state for one whole year previous to its birth, separate from its mother, and leaving her during that time continuing and residing in this state ; and the court below having passed upon this question, this court will not inquire into the sufficiency of that evidence. III. The mother is a competent witness to prove the non-access of her husband and the bastardy of her child. The statute provides that the mother shall be examined on oath touching the father of the child,

changing the old English rule on that subject. (1 *R. S.* 824, 3*d ed.*)

*By the Court,* JOHNSON, J.. If we were at liberty to look into the return, for the purpose of reviewing the rulings of the courts on questions of law, and correcting errors of that character, there can be no doubt that the order and determination of the court below should be set aside. The mother of the alleged bastard was a married woman, whose husband was living at the time of the alleged illicit intercourse and the birth of the child. And while she is, from the necessity of the case, a competent witness to prove the illicit intercourse, and who is in fact the father of the child, she is not competent as a witness to establish the non-access of the husband; nor his absence from the state; nor any fact which may be proved by other testimony. This seems to be the well settled rule. (2 *Stark.* 404. *Phil. Ev.* 87. *Greenl.* § 345. *Cowen & Hill's Notes,* 153, 1555, *and cases there cited.*) Lord Mansfield held that it was a rule founded in decency, morality and policy, that parties should not be permitted to say after marriage that they had no connection; while Lord Hardwick placed the incompetency of the wife on the ground of the interest of the husband, in charging another with the support of the child. The only evidence in the court of sessions, to prove the non-access or absence of the husband, was that of the mother, who was objected to as incompetent, by the relators, to prove such facts. The court overruled the objection and received the evidence. In this the court clearly erred.

The decisions upon the question how far this court will look into the return, to review and correct errors of this description, when the court below were acting within their jurisdiction, are somewhat conflicting. But the weight of authority is decidedly, as I think, against the right to review erroneous decisions in admitting or rejecting evidence, where the evidence itself is proper, and the objection lies only to the competency of the witness to testify in the cause or proceeding, and other errors of like character. The exception to this rule seems to be confined exclusively to cases where the common law certiorari is given

The People *v.* Overseers of Ontario.

by statute, and the court is expressly authorized to correct all errors in the proceedings and judgment. I have always been of the opinion that the rule should be otherwise, and that whenever the return showed clearly upon its face that a conviction or judgment had been obtained by evidence inadmissible by the well settled rules of evidence, this court should have the power to correct it. The rules of evidence should be uniform in all courts, and applied alike to all persons, or there can be no real security for person or property. But whatever may be the rule in this respect, it is clear, I apprehend, that it is proper for the court below, and indeed its duty, to return enough of the proceedings before them to show that they had jurisdiction not only of the subject matter of the inquiry, and of the person proceeded against, but also that some proof was made, which had at least a tendency to establish the material allegations in issue. The case of *The People* v. *Goodwin*, (1 *Selden*, 568,) is directly in point. To this extent it is clearly the duty of this court to look into the return. If on such examination it appears that the court had no jurisdiction of the subject matter, or that there was no evidence legally tending to establish the main facts which could alone authorize the judgment in either case, this court will set the judgment aside. In such cases this court does not deliberate upon the weight and just force of evidence, but determines merely whether there is any evidence whatever. In regard to all matters pertaining to the jurisdiction of the court below to entertain the proceeding, or to render the judgment or order brought up by the writ, all the decisions agree that the return is open to scrutiny, and the decision to correction.

In the present case, the mother of the alleged bastard, being a married woman with a husband living, the court below had no power or authority to compel any person other than the mother or the husband, to support such child, unless it was made to appear, either that the husband of its mother had continued absent out of this state for one whole year previous to the birth of such child; absent from its mother and leaving her during that time continuing and residing within this state; or that the mother was separated from her husband by the decree of a

competent court. In no other case could the child be regarded as a bastard within the meaning, or for any of the purposes of the act under which the proceeding in question was had. (1 *R. S.* 641, § 1.) There is no pretense that there was any decree of separation in this case. The child, therefore, for any of the purposes of this proceeding, was not a bastard, unless it was proved, or there was at least some evidence legally tending to show that the husband had been absent from the state, separate from the mother, for one whole year previous to the birth ; she in the mean time continuing and residing in this state. Unless these facts were established, the court of sessions had no power or authority to confirm the order of the justices, no matter who, in point of fact, was the father.

On the hearing of the appeal, the party in whose favor the order is made is required to substantiate it by evidence, or the court of sessions must reverse it. (1 *R. S.* 647, § 28.) The only evidence before the court of sessions, as appears expressly by the return—conceding the competency of the mother—bearing upon the husband's absence from the state, was the statement of the mother that he had been in Michigan. When, how long, or in what part of the state, did not appear. On her farther examination she admitted that she knew nothing of the fact except from hearsay. She also testified that she had not seen him for more than two years previous to the birth of the child, but had heard of his being in Walworth, Wayne county, in which county she resided, since she last saw him, but at what particular time does not appear. Now is there here any proof, even colorable, that the husband had been absent from the state for one whole year previous to the birth of the child ? If there is any testimony at all, which the law regards as evidence to establish a fact, that the husband was in the state of Michigan within the year previous to the birth, then the fact that the mother had not seen him for two years might raise the presumption that he had been out of the state for one whole year But his absence at all from the state, and his presence in Michigan, rests on mere hearsay. It was a fact which could readily have been established by direct and positive proof, or at least by

proof of some search and inquiry at his usual place of residence here, of which nothing was shown.   Under such circumstances, and to establish such a fact, can mere hearsay, mere vague rumors, springing, for aught we can see or know, from the conjecture or fabrication of the narrators, be regarded as evidence? It seems to me not.   All the books upon evidence agree, that hearsay, with certain exceptions, is not admissible as evidence. In *Mima Queen* v. *Hepburn*, (7 *Cranch*, 290,) Chief Justice Marshall said that " it is in its own nature inadmissible;" and he adds that the sole ground of its exclusion is not the supposition that some better evidence might be adduced in the particular case; but that "its intrinsic weakness, its incompetency to satisfy the mind of the existence of the fact, the frauds which might be practiced under its cover, combine to support the rule that hearsay evidence is totally inadmissible."   But suppose it is admitted, and the common law certiorari does not reach the error of receiving it, what does it tend to establish? Does it prove or tend to prove, legally, the existence of any fact sufficient to sustain the jurisdiction and the judgment of the court?   I am clearly of the opinion that all which evidence of mere hearsay or belief can legitimately tend to establish, in its very essence and nature, is that the witness heard the statement, or believed the fact to exist, and does not at all tend to establish the existence of the fact, and is therefore no evidence on which any judgment can be predicated or upheld.

It has been repeatedly held by our courts in cases where certain facts were necessary to be proved to the satisfaction of a court or officer, to give him jurisdiction to act, that evidence of information and belief as to those facts, was not sufficient to confer the authority.   That mere information and belief were neither facts nor circumstances upon which the court or officer could judicially act.   (*Loder* v. *Phelps*, 13 *Wend.* 46.   *Smith* v. *Luce*, 14 *Id.* 237.   *Ex parte Haynes*, 18 *Id.* 611.   *Matter of Faulkner*, 4 *Hill*, 601.)

If I am right in this, there was an entire absence of proof in regard to the main fact—the continued absence of the husband

from the state—upon which alone the jurisdiction of the justices to make, and of the court of sessions to confirm the order in question rested, and the order must be reversed and set aside.

[CAYUGA GENERAL TERM, June 6, 1853. *Selden, T. R. Strong* and *Johnson*, Justices.]