THE PEOPLE ex rel. EDWARD A. FROST et al., Respondents, *v.* JOHN H. WILSON, Appellant.

It is not essential to the validity of a register of electors under the registry act of 1872 (chap. 570, Laws of 1872), that the board of registry use, in preparing the preliminary register, the poll-lists of the next preceding general election. The inspectors of election acting as such board are simply required to enter in the register the names of all persons appearing on that list whom they may determine to be still residents in the district, and in discharging this duty are authorized to take and use such poll-list; but this is not compulsory, and their omission so to do is not a violation of the act.

The provisions of the said act (§ 1) as to the formal organization of the board of registry, and as to the certification of the registers, are directory merely, not jurisdictional; and the omission of the inspectors to observe them does not so invalidate their proceedings as to render all votes cast in the district illegal and void.

The provisions of section six of said act, prohibiting the receiving of any vote unless the name of the person offering it appears on the register made and completed, as provided by the act, preceding the election, and declaring that the section shall be considered as mandatory, and that every vote received in contravention of the section shall be void, etc., taking into view the intent of the legislature as ascertained from a consideration of the whole act, are to be construed as designed simply to prevent unregistered voters from taking part in the election; not to make the right to vote of persons whose names are on the registers depend upon the observance by the inspectors of all the minute directions of the act in preparing it, and thus to render the constitutional right

of suffrage liable to be defeated without fault of the elector, by the fraud, caprice or negligence of the inspectors.

*People ex rel. Frost* v. *Wilson* (3 Hun, 437) reversed.

(Argued April 27, 1875; decided May 25, 1875.)

APPEAL from order of the General Term of the Supreme Court in the fourth judicial department, denying a motion for a new trial and directing judgment on a verdict in favor of plaintiffs. (Reported below, 3 Hun, 437.)

The nature of the action and the facts are set forth sufficiently in the opinion.

The court directed a verdict for plaintiff which was rendered accordingly. Exceptions were ordered to be heard at first instance at Special Term.

*James C. Cochrane* for the appellant. The legislature has power to provide for ascertaining, by proper proofs, who are legal voters, that is, by evidence which the interested party has a right to hear and, if necessary, to controvert. (*B. and S. L. R. R. Co.* v. *Reynolds*, 6 How., 96.) The court erred in refusing to nonsuit Frost. (*People ex rel. Furman* v. *Clute*, 50 N. Y., 452.) It being conceded that no illegal votes were cast and that no fraud was committed, the irregularities claimed, if established, could not affect the election. (*People* v. *Cook*, 8 N. Y., 67; *People* v. *Pease*, 30 Barb., 588; affirmed, 27 N. Y., 45.)

*Henry R. Selden* for the respondents. There was no legally organized board of registry in the second ward, and, consequently, no valid registration of voters in that ward. (2 Laws 1872, chap. 570, §§ 1, 2, pp. 1384, 1385.) The receipt by the inspectors of large numbers of votes from persons whose names were not on the registry was fatal to the whole vote. (*People ex rel. Judson* v. *Thacher*, 1 N. Y. S. C., 158; *People* v. *Cook*, 8 N. Y., 94.) The entire want of any certificates to either the preliminary or completed register rendered the whole vote void. (*Van Rensselaer* v. *Whitbeck*, 7 N. Y., 517; *Pitkin* v. *McNair*, 56 Barb., 75; *People* v. *Hopple-*

*hous*, 16 Mich., 342; *State* v. *Hilmanthe*, 21 Wis., 566; *Nefzger* v. *D. and St. P. R. Co.*, 8 West. Jur., 424.)

ANDREWS, J. This action is in the nature of a *quo warranto*, brought to oust the defendant from the office of county clerk of the county of Monroe to which he claims to have been elected at the general election held in that county in the fall of 1873, and to establish the title of the relator thereto.

It appears from the certificate of the board of county canvassers, that the whole number of votes cast at that election for the office of county clerk was 18,274; of which the defendant received 9,203, and the relator 9,071; the defendant's majority as certified, being 132. In this aggregate is included 562 votes cast in the second ward of the city of Rochester of which the defendant received 424, and the relator 138, making the defendant's majority in that ward 286. The court, at the conclusion of the evidence, held and decided that the entire vote cast in this ward was illegal and void, on the ground that the register made by the inspectors of election, previous to the election, was not made and completed as required by law, and the jury under the direction of the court, rendered a verdict for the relator. If the judge was justified in holding that the vote in the second ward was a nullity, the conclusion at which he arrived cannot well be resisted. The majority for the defendant in the whole county as certified by the county canvassers, was less than his majority in the second ward, and if he is deprived of the benefit of that vote, and only the votes cast in the other election districts of the county are to be counted, the relator was elected by a majority of one hundred and fifty-four.

It is not claimed that the persons who voted in the second ward were not legally qualified electors therein, or that there was any default or neglect on their part (except as to forty-three of the persons who voted) to comply with the registry law.

The sole ground upon which the court proceeded, and upon which the votes in the ward were rejected, is, that by the omission and neglect of duty of the inspectors, in making and completing the registry, as required by the registry act, they lost their right to be counted in determining the final result of the election. The names of the persons who voted in the second ward (except the forty-three before mentioned) were upon a list prepared and used as a register by the inspectors, but it is claimed that by their failure to comply with the statute in organizing the board of registry, and by disregarding its directions touching the mode of procedure in preparing and certifying the register, there was no legal registry of the electors of the ward, and in consequence, no legal vote was taken therein at the election. It will be perceived from this general statement of the case, that the question presented is one of great gravity and importance. If the ruling below is sustained, the relator, although he received only a minority of votes actually cast, is declared to be elected ; the defendant who had a majority of the electoral vote is deprived of his office ; the electors of the county are defeated in the attempt to express their will in the choice of an elective officer, and the voters of the second ward are, by the neglect of the inspectors and without their fault, deprived *pro hac vice* of the right of suffrage. Very clear warrant ought to be found in the statute, for a conclusion which involves such consequences.

The irregularities in the registry, of which the relator complains, and upon which the decision of the court rejecting the vote in the second ward is sought to be supported, are : 1st. That but two of the inspectors of election were present at the meeting for the preliminary registry : 2d. That they did not appoint a chairman, or take the oath of office at that meeting : 3d. That they made the preliminary register from the register of the spring election instead of the poll-list of the general election in the fall of 1872 : 4th. That they did not certify either the preliminary or completed register. That the inspectors in making the preliminary register used the register of the spring election of 1873, and not the poll-list

of the general election in the preceding year, was established by the clear preponderance and weight of evidence. By the mistake of the city clerk with whom poll-lists kept at elections are filed, the register of the spring election of 1873 was put into the hands of the inspectors of the second ward when they met to make the preliminary register instead of the poll list of the previous fall election, and was used by them at that time.

It is claimed by the learned counsel for the relator, and the judgment of the General Term proceeded upon the proposition, that the statute imperatively requires that inspectors of election in making a register shall use the poll-list of the next preceding general election, and enter in the new register all names appearing thereon. But we are of opinion, after a careful consideration of the provisions of the registry act, that while it authorizes the inspectors to use the poll-list of the last preceding general election in preparing the preliminary register, and for this purpose to take it from the office where it is filed, its use by them is not made imperative, and is not essential to the validity of the registry, and that the inspectors are not required to enter therein the names of all persons appearing upon the list.

The general duty enjoined by the first section of the registry act (Laws of 1872, chap. 570) upon a board of registry is " to make a list of all persons qualified and entitled to vote at the ensuing election, in the election district of which they are inspectors." The second section prescribes, with great minuteness, the manner of making the list, and, among other things, that the names shall be alphabetically arranged, that the list shall show the residence of each person by the number of his dwelling, if any, and the street where it is located, and if he is an occupant of a tenement-house, occupied by several persons, or of a lodging place, the number of the room, if any, and the floor or story occupied by him. The section then provides: " It shall be the duty of said inspectors to enter in said lists the names of all persons residing in their election district whose names appear on the poll-

list kept in said district at the last preceding general election ; and for this purpose said inspectors are authorized to take from the office, in which they are filed, the poll-list made and filed by the inspectors of such district at the general election held next prior to the making of such register."

It will be observed that the inspectors are not required, in making the new register, to copy the poll-list of the previous general election. The duty enjoined is to enter in the register the names of all persons *residing* in the district whose names are on the poll-list of the preceding general election. Persons who voted at that election may, before the new register is made, have changed their residence to another State or district, or have died. The names of such persons manifestly are not to be placed on the register. The inspectors must determine, from such information as they can command, who are the electors still resident in the district whose names are on the poll-list of the next preceding general election, and to aid them in discharging the duty which the law imposes upon them, the statute authorizes the inspectors to take the poll list from the office where it is deposited, and while it contemplates its use by them it does not compel them to use it; and the omission to do so is not a violation of the act.

The duty of the inspectors in this case was to place on the preliminary register the names of all persons still residing in the second ward, whose names were on the poll-list of the fall election of 1872. If they were so placed upon it, the duty was performed, however they derived the information upon which they acted. If not so placed upon it, and the omission was willful, they were liable to indictment and punishment. It was suggested on the argument, that one of the objects of the provision in respect to the use of the previous poll-list, in making the new registry, was to save to voters who had once registered, and who had voted at the preceding general election, the necessity of giving any further attention to the subject of registry. This result will generally be secured by a faithful performance by the board of registry of the duty enjoined upon it. But a voter cannot

rely with absolute security upon the action of the board. His name may have been omitted from the register through inadvertence, or clerical or other mistake, or from false information as to his continued residence in the district. The statute provides for corrections and additions to the preliminary list to be made at the second meeting of the board, and if by mistake or otherwise the name of a voter has been improperly omitted, he must appear and procure it to be inserted. It is therefore, we think, a sufficient answer to the point upon which the General Term rested its judgment, that no absolute duty is enjoined by the statute upon inspectors, to use the poll-list of the previous general election in making their register.

By the first section of the registry act, inspectors of election in districts embraced within it are required to meet at a time and place designated, and organize themselves as a board of registry, and for this purpose they shall, the section declares "appoint one of their number chairman of the board, who shall administer to the other inspectors the oath of office as by the constitution, and the same oath shall then be administered to the chairman by one of the other inspectors."

In this case it was proved that but two of the inspectors for the second ward were present when the preliminary register was made, and that they did not formally organize as a board or take the oath of office. They proceeded, however, to act as a board of registry. When the preliminary register was completed they made four copies, but omitted to certify either the original or the copies as required by the second section. At the final meeting for completing the register all the inspectors were present. At that time one of the inspectors was appointed chairman of the board and each took the official oath. One of the preliminary lists was used for making the corrections and additions, and when the register was completed four copies were made but none of them were certified as required by the sixth section.

It is quite clear that, independently of the sixth section, the provisions of the registry act, that the board of registry

shall appoint a chairman and that the members shall take the oath of office and requiring the certification of the registers, must be regarded as directory merely and not jurisdictional; and the omission of the inspectors to observe them did not, according to the general current of authority, invalidate their proceedings.

In the leading case of the *People* v. *Cook* (8 N. Y., 67; S. C., 15 Barb., 293), will be found many illustrations of the application of the general rule stated by MASON, J., that statutes directing a mode of proceeding of public officers are regarded as directory, unless there is something in the statute which shows a different intent. In this case it was held that an election was not invalidated, although held by officers who were such *de facto* merely, or because the inspectors and clerks omitted to take the oath of office, or by reason of the failure to appoint two clerks as directed by the statute, or closing the outer door at sundown and preventing any person from entering the room where the poll of the election was held and receiving thereafter the votes of those in the room. These irregularities were regarded as not being matters of substance which should invalidate the election.

The rule of construction referred to is peculiarly appropriate as applied to the proceedings of election officers. The election laws are designed to secure a fair expression by the electors of their choice of public officers. It is of paramount importance, under our system of government, that unqualified persons shall be excluded from the suffrage and that elections shall be conducted in a way which shall secure public confidence that the results are truly and honestly declared. It is eminently proper that inspectors and boards of registry should act under the sanction of an official oath, and that they should comply with the forms prescribed by statute in conducting elections. They are punishable if they willfully omit to do so. But it often happens that inspectors of election are men unacquainted with the duties of the position and the numerous and sometimes complicated provisions of the election laws.

The statute does not create the right to vote. It exists by force of the Constitution, and to defeat the right because election officers failed to qualify or to certify the register, it not being shown that the result was changed by the omission, is, as we have said, against the general tenor of authority. (See Brightley's Election Cases, 448, note.)

While the general rule of construction, to which we have adverted, is not questioned by the learned counsel for the relator, it is claimed that by force of the sixth section of the registry act any failure to make and complete the register in the manner prescribed by the act is a fatal defect, rendering every vote received by the inspectors void, although the names of the persons voting are entered upon the list. That section directs that copies of the completed list shall be made and certified, and that one shall be filed in the clerk's office of the city or town and one be retained by each of the inspectors, and that one of the inspectors or clerks shall be designated, at the opening of the polls, to check the name of each person voting whose name is on the register and then proceeds: " And no vote shall be received at any annual election in this State unless the name of the person offering to vote is on the said register made and completed, as hereinbefore provided, preceding the election ; and any person whose name is on the register may be challenged, and the same oaths shall be put as are now prescribed by law. This section shall be taken and held by every judicial and other officer as mandatory and not directory ; and any vote which shall be received by the said inspectors of election, in contravention of this section, shall be void and shall be rejected from the count, in any legislative or judicial scrutiny, into any result of the election."

This section is construed by the counsel for the relator as prohibiting the inspectors from receiving a vote from any elector if the register is not made and completed, in all respects, in conformity with the statute, and the counsel is forced to take this position. The section makes no distinction between omissions in matters of substance and form, and the irregularities claimed to exist in this case would,

under the general rule of construction as has been shown, be regarded as formal and not substantial. The act directs, in great detail, the mode of procedure in making the register and what it shall contain.

If an exact compliance by the inspectors with these directions is essential to the right of an elector to vote, elections will often fail, and voters will be deprived without their fault of an opportunity to vote. The second section requires that the inspectors shall enter in the preliminary register the number of the house, and in tenement-houses the number of the room, and the floor or story occupied by the resident electors whose names are on the poll-list of the preceding general election, and the street on which the house or tenement is located, and so also in respect to persons whose names are put on the register at the second meeting. If the inspectors fail to make these entries, or make them imperfectly, the register is not " made and completed " as required by the act, and yet the seventh section seems to contemplate that the votes of persons whose names are on the register may be received, although their residence is not correctly stated, for it provides that the clerks at the election shall enter on the poll-lists opposite the name of each voter " the same statement or minute heretofore required of inspectors in making the registry, but such entry is not to be made by them, if the registry correctly contains the name and residence of such voter," and it. is not a ground of challenge that the residence of the voter is not entered on the register.

We are of opinion that the sixth section is not subject to the construction placed upon it by the relator, and that by the true construction of that section the inspectors are prohibited only from receiving the votes of persons not registered prior to the election. The prohibition was designed to prevent unregistered voters from taking part in the election, and to compel registration to be made before the day of election, and not to make the right to vote of persons whose names are on the lists prior to the election to depend upon the fact of the inspectors having observed all the

minute directions of the act in preparing the register. The literal language of the section may justify the construction claimed by the relator. But a slight transposition of the clauses of the sentence containing the prohibition so that it shall read : " No vote shall be received unless the name of the person offering to vote be on the said register, made and completed, *preceding the election*, as hereinbefore provided," tends to point the real meaning of the section. The construction claimed by the relator, if admitted, would punish the electors for the delinquencies of the inspectors, and render the right of suffrage insecure, and liable to be defeated by their fraud, caprice or negligence. The act affords to every elector an opportunity to have his name placed on the register. One of the preliminary lists is to be filed in the clerk's office of the city or town, and one is to be posted in a conspicuous place in the room where the election is to be held. If the name of any elector has been omitted from the preliminary list he can appear at the second meeting of the board of registry, and have it inserted. But no duty is imposed upon him by the act to appear at the second meeting to correct a mistake which the inspectors may have made either in omitting to designate his residence, or in making a wrong designation. If he finds by an examination of the preliminary list that his name is entered, no further duty is required of him. Is he then to lose his vote because the inspectors have failed to do their duty in the respect mentioned ? If the residence of any of the persons whose names are on the list is omitted when it could have been ascertained, the register is not " made and completed " as required by the act. Will this omission debar the inspectors from receiving the votes of the other registered electors ? This result would seem to follow from the construction of the sixth section claimed by the relator.

In construing a statute the intention of the law giver, when ascertained from a consideration of the whole act, is to prevail over the literal sense of particular words or clauses and an intention is not to be imputed to the legisla-

ture which is unreasonable and contrary to justice and equity. To hold that the omission of the inspectors to organize the board of registry in precise accordance with the statute, or their failure to take the oath of office or to certify the register, were jurisdictional defects which rendered the register void, and the whole vote of the ward illegal, would be to deprive citizens of the most important of their political rights without an opportunity to be heard. For the reasons stated we are of opinion that the ruling of the court on the trial rejecting the vote of the second ward on the ground that the register was not made and completed, as required by the registry act, was erroneous.

The forty-three votes cast by persons not registered were plainly illegal. If, however, they are taken from the vote of the defendant the result would not be changed, and for this reason the fact that they were illegally received is immaterial. (*People* v. *Thacher*, 55 N. Y., 525.)

The court on the trial ruled that the objections taken by the relator to the vote in the eleventh ward were not tenable, and directed a verdict for the relator expressly on the ground of the illegality of the vote in the second ward. The relator claims that the court erred in allowing the vote of that ward and that it should have been rejected, which if done would have entitled him to recover, although it is held that the vote of the second ward was improperly disallowed. Without considering whether the relator can on this appeal question the ruling of the court against him as to the vote of the eleventh ward, it is sufficient to say that some of the objections taken cannot be sustained upon the construction we have given to the sixth section of the registry act, and that as to the other irregularities shown, proof may be given on a new trial, which will not render them fatal to the title of the defendant.

The order of the General Term should be reversed and a new trial granted.

All concur.

Order reversed and ordered accordingly.