## 54  PEOPLE ex rel. WRIGHT v. COURT OF SESSIONS.

Fifth Department, June Term, 1887.

# THE PEOPLE OF THE STATE OF NEW YORK ex rel. FREDERICK B. WRIGHT v. THE COURT OF SESSIONS OF ONTARIO COUNTY.

*Bastardy cases — the judgment should be reviewed by appeal and not by* certiorari — *Code of Criminal Procedure, secs.* 515 *and* 749, *as amended by chapter* 372 *of* 1884 — *what questions are to be determined — a wife cannot prove non-access of her husband.*

By the passage of chapter 372 of 1884, amending sections 515 and 749 of the Code of Criminal Procedure, the writ of *certiorari* was abolished as to proceedings and special proceedings of a criminal nature, and from and after its passage orders of the Court of General Sessions, made in bastardy proceedings, can only be reviewed on an appeal.

*People ex rel. Fuller* v. *Carney* (29 Hun, 47) explained and distinguished.

While the provisions of section 2140 of the Code of Civil Procedure, prescribing the questions which are to be determined by the court upon the hearing on a return to a *certiorari*, "are limited to civil actions and proceedings," yet, as the adoption of the section seems to show that the legislature approves of the rule therein laid down, it should be used by the court as a guide in determining the questions to be determined in criminal proceedings.

In proceedings instituted to have the relator adjudged the father of a bastard child, the mother, a married woman, was allowed to testify as to non-access of her husband for the year previous to the birth of the child.

*Held,* that the evidence was incompetent.

That the common-law rule which made such evidence incompetent had not been changed by the adoption of sections 828 and 831 of the Code of Civil Procedure.

RETURN of the Court of Sessions of Ontario county to a writ of *certiorari.*

*E. W. Gardner,* for the relator.

*Edin Hicks* and *Henry M. Fields,* for defendant.

HAIGHT, J. .

On the 6th day of February, 1886, an order of filiation was made by two magistrates of the county of Ontario, adjuding the relator to be the father of a bastard child born of one Eunice Horton.

From such order an appeal was taken to the Court of Sessions of that county, in which court the order was affirmed. Whereupon, and on application by the relator to the Special Term of this court a *certiorari* was issued to the Court of Sessions requiring that court to return all of the proceedings therein to this court.

In the case of the *People ex rel. Fuller* v. *Carney* (29 Hun, 47) we held that since the adoption of the Code of Criminal Procedure, orders of the Court of General Sessions, made in bastardy proceedings, could only be reviewed at the General Term upon a common law writ of *certiorari;* that under section 515 of the Code of Criminal Procedure the writ of *certiorari* was abolished only in criminal actions, and that it was not abolished as to special proceedings of a criminal nature. The next year, however, this section of the Code was amended (chap. 372, Laws of 1884), and the writ was abolished as to proceedings and special proceedings of a criminal nature, and it was provided that, "hereafter the only mode of reviewing a judgment or order in a criminal action or proceeding or *special proceeding of a criminal nature is by appeal*."

At the same time section 749 of the Code of Criminal Procedure was also amended by inserting in that section the words, "or proceedings or special proceedings of a criminal nature," so that as it stands amended it reads, "a judgment, upon conviction rendered by a Court of Special Sessions, Police Court, police magistrate or justice of the peace, in any criminal action or proceedings or special proceeding of a criminal nature, may be reviewed by the Court of Sessions of the county upon an appeal as prescribed by this statute and not otherwise," etc.

Section 770 provides: "If the judgment on the appeal be against the defendant, he may appeal therefrom to the Supreme Court in the same manner as from a judgment in an action prosecuted by indictment and may be admitted to bail upon the appeal in like manner."

Section 771 provides that, "the judgment of the Supreme Court upon the appeal is final."

It thus appears that the amendment of 1884, has changed the practice in this regard, and that the proceedings can now only be

56    PEOPLE ex rel. WRIGHT *v.* COURT OF SESSIONS.

Fifth Department, June Term, 1887:

reviewed on an appeal. The respondents, however, have not moved to quash the writ; but upon the argument waived any question in reference to the right of this court to review the proceedings upon the writ, and consented that the court might review the same with the same force and effect as if the writ had not been abolished.

It is contended, however, that the facts are not brought before this court for review under the writ, and that the only questions we can consider, are those as to jurisdiction of the subject-matter of the person of the defendant, and to see that some proof was made which had a tendency to establish the material allegation in issue. There is a considerable conflict in the authorities as to what questions are brought up for review by a common-law writ of *certiorari*, but we regard the question as now virtually settled by legislative act.

In the case of the *People ex rel. Haines* v. *Smith* (45 N. Y., 772–776), it was held that upon the return to such a writ, the court is not limited to the inquiry whether jurisdiction of the parties and subject-matter was acquired; but should examine the evidence and determine whether there was any competent proof of the facts necessary to authorize the adjudication made and whether, in making it, any rule of law affecting the rights of the parties, has been violated.

In the case of the *People ex rel. Wilbur* v. *Eddy* (57 Barb., 593–601), it was held to be the duty of the court to examine, in all cases on *certiorari :* 1. As to jurisdiction. 2. The court will reverse if the moving party, upon their own showing, fail legally to make out their case. 3. Where the testimony fails to support the matter charged. 4. Where some evidence is given to support the charge, however slight, if judgment be given thereon, and where there is evidence upon the merits on both sides, the court will not reverse, unless the case be one in which the weight of evidence is very greatly preponderating or is so strikingly so as to create a suspicion of injustice arising from prejudice or passion.

Subsequently to these decisions, the legislature adopted section 2140 of the Code of Civil Procedure, which makes provisions as to the questions to be determined upon the hearing of a common law writ of *certiorari*. It provides that "the questions involving

the merits to be determined by the court upon the hearing are the following only : · 1. Whether the body or officer had jurisdiction of the subject-matter of the determination under review. 2. Whether the authority conferred upon the body or officers in relation to that subject-matter has been pursued in the mode required by law, in order to authorize it or him to make the determination. 3. Whether in making the determination, any rule of law affecting the rights of the parties thereto has been violated to the prejudice of the relator. 4. Whether there was any competent proof of all the facts necessary to be proved in order to authorize the making of the determination. 5 If there was such proof, whether there was, upon all the evidence, such a preponderance of proof against the existence of any of those facts, that the verdict of the jury affirming the existence thereof, rendered in an action in the Supreme Court, triable by a jury, would be set aside by the court as against the weight of evidence."

The reviser in his note tells us that this section was framed to settle the law as to the questions to be reviewed under the writ, and that it was intended to embody the rule as laid down in the cases above referred to. Whilst these provisions of the Code are limited to civil actions and proceedings, and were not intended to have any application in criminal proceedings, still the section quoted appears to have a legislative approval of the rule as laid down in the cases referred to, and they should, therefore, form our guide in determining the questions involved in this case.

Upon examination of the return, it appears that some evidence was received that should have been excluded as incompetent. But we do not understand that the proceedings can be annulled by reason of errors in the admission or rejection of evidence only, provided no rule of law affecting the rights of the parties has been violated to the prejudice of the relator, and where there is any competent proof of all the facts necessary to be proved in order to authorize the determination. (*The People ex rel. Mizner* v *Hair*, 29 Hun, 125.) But if there is no competent proof of a fact necessary to be proved, then the proceeding must be reversed

Upon the hearing before the Court of Sessions, Eunice Horton was sworn as a witness on behalf of the respondents, and gave evidence tending to show that she had illicit intercourse with the

defendant, and had subsequently given birth to a child.   On her cross-examination she testified that she was married nine or ten years ago to Willis Lansing, that they were married in Sheshire, Ontario county, and that she had never heard of Willis dying.   On her redirect-examination she was asked the question how long since you have seen your husband ?   This was objected to as incompetent, that she was not a competent witness to show or prove non-access of her husband.   The objection was overruled, exception taken, and she answered eight years.   It is upon this evidence that the court has found that the child born was a bastard.

Section 838 of the Code of Criminal Procedure provides that " a bastard is a child who is begotten and born.   1. Out of lawful matrimony.   2. While the husband of its mother was separated from her for a whole year previous to its birth, or   3. During the separation of its mother from her husband, pursuant to the judgment of a competent court."   There is no pretense that she had ever been separated from her husband by any judgment or decree, so that it was necessary for the respondents to establish that she had been separate from her husband for a whole year previous to the birth of the child in order to make it a bastard.

The only other evidence bearing upon the subject which we have been able to discover, was that of William Anderson, who worked for Wright, for whom Eunice Horton also worked, from the seventeenth of March until the fifth of October, who testified that there was no one there during that time claiming to be her husband, or that she seemed to recognize as such.   But this evidence, if competent, does not cover the year prior to the birth of the child.   There is no pretense that he was acquainted with her husband, or would have known him had he seen him.   It is true she worked for Wright, and lived there during that season, but it does not appear that she was there all of the time.   On the contrary it appears that she was away some time between the fifteenth of March and the of middle April; and that it was between these dates that she must have conceived the child of which she was subsequently delivered.

The witness McClure testified that he overtook her upon the road, that she was on her way to Canandaigua, and that he asked her to ride.   The question is therefore narrowed to the competency

of the mother to prove non-access of her husband, for it is upon her testimony alone that the fact appears that she had not seen her husband for the year prior to the birth of the child. At common law there is no question but that this evidence is incompetent. Public morals and decency would not permit a wife to testify to any fact tending to show her own child to be illegitimate. (Wharton on Evidence, § 608.)

In the case of the *People ex rel. Crandall* v. *The Overseers of the Poor of the Town of Ontario* (15 Barb., 286) the same class of evidence was offered and received, and it was held that the evidence was incompetent and did not establish the fact that the husband had been absent a year. But it is contended that the rule has been changed by the Code, and that such evidence is now competent. If any change has been made it is because of sections 828 and 831 of the Code of Civil Procedure. The first section provides that " Except as otherwise specifically prescribed in this title, a person shall not be excluded or excused from being a witness by reason of his or her interest in the event of an action or special proceeding, or because he or she is a party thereto, or the husband or wife of a party thereto, or of a person in whose behalf an action or special proceeding is brought, prosecuted, opposed or defended." It will be observed that the witness Horton was not the wife of a party to the action, or of a person in whose behalf the action or special proceeding is brought, prosecuted, opposed or defended, and consequently she is not brought within the provisions of this section. A careful reading of the next section fails to disclose any provision authorizing such testimony. We think that the statute has failed to change the common law rule in this regard (*Chamberlain* v. *The People*, 23 N. Y., 85.)

It follows that the evidence received was incompetent, and that there was no competent evidence establishing the fact of non-access of her husband for the period of one year prior to the birth of the child. For these reasons the proceedings must be reversed and remitted to the Court of Sessions of Ontario county, in which court a rehearing is ordered, costs to abide event. This disposition of the case renders it unnecessary to consider the questions involved in the appeal from the order denying a new trial upon the ground of surprise and newly discovered evidence.

An order may, therefore, be entered as to that appeal of reversal, but without costs to either party.

SMITH, P., J., concurred; BRADLEY, J., concurred in result.

Order of filiation reversed, and proceedings remitted to the Court of Sessions of Ontario county, in which court a rehearing is ordered; order appealed from reversed.