(14 Misc. Rep. 377.)

## In re HIRSH.

(Supreme Court, Special Term, Queens County.  November 23, 1895.)

1. ELECTIONS—OBJECTIONS TO BALLOTS—TIME OF MAKING.
   Where ballots are prepared, and a facsimile is kept open to inspection before the election, as provided by Laws 1892, c. 680, § 86, as amended by Laws 1895, c. 810, and the ballots are voted without any objection being made under section 88, which provides that any voter may show any error in the ballot by affidavit to the supreme court, which shall thereupon cause it to be corrected, such ballots will not be excluded from the canvass on the ground that state and local nominees were improperly placed in the same column.

2. SAME—MISTAKE IN PREPARATION—MARKING FOR IDENTIFICATION.
   A mistake made by the clerk in preparing the ballots under section 86 is not marking them for identification, within section 114, prescribing what shall be done in case ballots are marked in any way for identification.

Application by Hugo Hirsh for a writ of mandamus.    Denied.

Henry A. Montfort, for the motion.

Harrison N. Moore, Elihu Root, and Benj. F. Tracy, opposed.

GAYNOR, J.  By section 56 of the election law [1] all nominations for office made by party conventions are known as "party nominations."    In this respect it puts a mere local, isolated party organization upon the same footing as a state party organization, with its gradation of local divisions or sections from state down to town.    It applies, however, only to such organized parties, state and local, as polled at the last preceding election the number of votes required to give it a status to make nominations, viz. 10,000 votes in the case of a state party, and 1 per cent. of all the votes cast in the locality in the case of a local party.    By section 81 it is provided that all nominations shall be printed upon one ballot, in parallel columns, and that the ticket, or list of candidates, of each party, shall be put in a separate column.    Thus each party, state or local, now has its separate column, whereas formerly it had a separate ballot.    The Gleason, or "Regular Democratic Party," as its legal name is, is a local party in Queens county.    It nominated by convention candidates for the county offices, for senator and assemblymen, and also for the city offices of Long Island City, which is within the county.    It made no other nominations.    By section 86 it was the duty of the county clerk to prepare the ballots for the election.    This he had to do from the certificates of nominations filed in his office in the case of county and lesser local nom-

[1] Laws 1892, c. 680, amended by Laws 1895, c. 810.

inations, and from the certificate to him by the secretary of state of all nominations for offices to be voted for by the electors of the whole state, or of any district of the state larger than a county. Sections 58, 60. When the county clerk came to deal with the said local nominations of the said Gleason party in the making up of the ballot, he was confronted with the question whether he should place them alone in that party's column, or whether he should fill the column out in respect of all the other offices, with the nominees of another kindred party organization, if there was such. The said Gleason party was in unity of political principles or faith with the Democratic party of the state. It was not in unity of political organization with it only because of differences as to local men and measures. This court, at both special and general term (In re Mitchell, 81 Hun, 401, 30 N. Y. Supp. 962), had, prior to the last two preceding general elections, decided, in substance, that such unity in political faith was enough to entitle the said local party, in the preparation of the official ballots, to have the blank spaces upon its ballot filled out with the nominees of the state Democratic party. The county clerk this year followed these decisions, and associated the Democratic state and judiciary nominations with the said Gleason local ticket, thus making a complete ticket for its column. This could not do any harm, while it enabled a large number of voters to vote as they desired without difficulty. This court is now asked to require by mandamus the board of county canvassers to exclude from their canvass and count all votes cast for candidates for justices of the supreme court by means of the said Gleason column.

The decisions of this court above mentioned had been made in the general spirit of the new election law, to make intelligent and discriminate voting easy. The title of the election act of 1890, which, with amendments, makes our present election law, was, in part, "An act to promote the independence of voters at public elections." A contrary decision would have construed our improved election law to be, not a method of making independent voting easy, but a scheme to make indiscriminate straight party voting easy, and discriminate voting difficult and perplexing. The election law was changed at the last session of the legislature by doing away with separate ballots for each ticket of nominations, and putting all tickets of nominations upon one ballot, in separate columns, as already stated above; and also by requiring each ticket to be headed by an emblem, in addition to the former requirement of a party name only. Section 56. Since this change the supreme court in the first judicial department has decided that the nominees of a local party must stand alone in that party's column upon the ballot. It is said that the new requirement of an emblem makes such a substantial change that this decision had to follow. It may not be easy to see how the mere coupling of an emblem with the name at the head of the ticket makes a different case; nor can the rule of this decision result in lessening the number of party columns, as has been stated. But it is not necessary to make a choice between these conflicting decisions. It is enough for the decision of the case now under consideration that the law casts upon the county clerk the

duty of combining allied nominations, and of thereby making up the tickets and the ballots from the certificates of nominations; and that he did make them up, and that the voters used them. The state cannot take unto itself the providing of the only ballots which the voters may use, and then disfranchise the voters for having used the ballots which it furnished. It has always been, and is yet, a cardinal rule in the law of elections that election officers may not, by their mistakes, or even by their misconduct, disfranchise voters; and, if there be any exception to this rule, it arises out of the insurmountable obstacles of a particular case. Paine, Elect. § 499: People v. Wilson, 62 N. Y. 186. But our present election statute provides for the settling of all questions like that now before the court in respect of ballots in advance of the election, and thereby precludes the raising of such questions after election. By section 86 the county clerk is required to have sample ballots open to inspection and objection five days, and facsimiles of the official ballots four days, before election. By section 88 any voter may show by affidavit to the supreme court or a justice thereof that an error or omission has occurred in the printing of the sample or official ballots; whereupon such court or justice is required to hear the case, and cause the same to be corrected. The statute thus provides for the establishing of the legality of the ballot in these respects before election by itself giving due notice and opportunity to every one to be heard concerning such errors or mistakes. I think the legality of the ballot in these respects is thus conclusively established. In re Union El. R. Co. of Brooklyn, 112 N. Y. 61, 19 N. E. 664. And in the present instance a voter did apply to this court to have the Democratic state and judicial nominations removed from the said Gleason ticket, but the court held that they were lawfully placed there, and denied the application. The result of following these provisions of the statute must be just as conclusive upon the public and upon every one as are, for instance, statutory proceedings for the closing of a public highway. 1 Rev. St. p. 518, § 81.

I have thought it best to dispose of the case on the merits, though I think the petitioner is not in a position to be heard upon the merits at all. The ballots having been voted, the canvassers had no power to reject them as void. Such power is given to them only in the case of ballots (section 104) "from which there shall have been erased any device, figure or word, or upon which there shall be written any word or words other than the name of the candidate, as above provided" (viz. in the column provided for that purpose). The canvassers, therefore, having no power to reject the ballots in question, this court has no power to order them to do so. The object of an election count is to ascertain the prima facie result from the ballots which have to be counted, and a court may interfere only to cause this result to be reached in due order. All questions lying deeper than this may only be heard and decided in an action to test title to office.

The contention of the learned counsel for the petitioner that the ballots were marked for identification within the meaning of section 114, by reason of the filling out of the Gleason column with the

nominees of the Democratic party in the way above stated, I fail to understand. All of the ballots being the same, it cannot be said that they were marked to be identified or distinguished. Moreover, the meaning of the statute is that the marking of ballots for identification must be by the voters themselves. The mistakes of the county clerk may not be attributed to them. But the case of ballots alleged to be marked for identification is carefully provided for by the statute. The canvassers are obliged to count them, but they have to annex them to their return, and then this court is given jurisdiction to determine whether they were marked by the voters for the purpose of identification, and, if so, to have them deducted from the totals by the canvassers of election. Section 118. The ballots not having been challenged and returned as marked, the court cannot pass upon them in that respect. People v. Shaw, 133 N. Y. 493, 31 N. E. 512.

The motion is denied.