## ARCHIBALD L. BADDER v. ULYSSES GRANT KEEFER.

*Seduction—Evidence—Pleading—Leading questions.*

1. In a civil suit for seduction, if the illicit intercourse has not been admitted by the defendant, it is competent for the plaintiff to show that the defendant proposed to the girl to procure an abortion, and that he consulted a druggist upon the same subject, as tending to show that he had sexual intercourse with her, and might be the cause of her pregnancy.

2. If the defendant admits on his direct examination the fact of illicit intercourse, which he claims was secured without seductive

solicitation on his part, further inquiry on his cross-examination as to the proposed abortion or his motive in consulting the druggist is immaterial to the issue in the case, and should be excluded.

3. The following propositions are summarized from the opinion of Mr. Justice GRANT, and are concurred in by Mr. Justice MONTGOMERY, and not dissented from by the remaining Justices:

*a*—In a suit by a father for the seduction of his minor daughter, a declaration alleging that plaintiff complains of the defendant for and in behalf of his daughter, who is a minor, he being fully authorized by her so to do, clearly states that the action is brought for and in behalf of the daughter, and the allegation as to authority will be treated as surplusage.

*b*—There are many cases in which counsel are justified in the use of leading questions, and in determining their propriety the circuit judge must be largely governed by the intelligence, character, or timidity of the witness, and the case must be an extreme one to justify a reversal upon this ground.

*c*—It is competent to show in a civil suit for seduction that the girl yielded to the defendant's solicitations under promise of marriage, and also to show subsequent acts of illicit intercourse; *People v. Clark*, 33 Mich. 112, not applying to such a case.

Error to Ionia. (Smith, J.) Argued April 13, 1892. Decided May 13, 1892.

Case. Defendant brings error. Reversed. The facts are stated in the opinion.

*A. A. Ellis* and *F. C. Miller (Davis & Nichols*, of counsel), for appellant.

*Clute & Clute,* for plaintiff.

GRANT, J. This is an action on the case for seduction. Plaintiff had verdict and judgment.

1. Defendant requested the court to direct a verdict for the defendant, upon the ground that the plaintiff could not recover under his declaration. The clause of the declaration upon which the request was founded was as follows:

"Archibald L. Badder, plaintiff in this suit, by Lemuel and William K. Clute, his attorneys, comes into this court, he being fully authorized so to do by his daughter Nora Badder, an infant of the age of, to wit, nineteen years, and complains, for and in behalf of said Nora Badder, of Ulysses Grant Keefer, defendant," etc.

How. Stat. § 7779, provides that—

"If the female seduced be a minor at the time of the seduction, the action may be brought by her father, mother, or guardian."

It is contended that the statement in the declaration, that he is "fully authorized so to do," negatives the idea that plaintiff brought, or intended to bring, the action by virtue of his being the father of the party seduced. We see no force in the objection. The declaration clearly states that the action is brought for and in behalf of his daughter. The expression, "being fully authorized by her so to do," will be treated as mere surplusage, since the declaration clearly shows for whose benefit suit is instituted. The court was correct in refusing the request, and in holding that the damages were hers, and not her father's. *Watson v. Watson*, 49 Mich. 545; *Ryan v. Fralick*, 50 Id. 483. In the latter case the declaration is given in full, and contains no such allegation as that in the present case. That suit was brought by the mother, the father being dead, and the declaration alleged only damages to the mother. The court offered leave to the plaintiff to amend, which she refused to accept, and thereupon verdict was directed for the defendant.

2. It is alleged that the court erred in allowing the mother of Nora to answer the following questions:

"Do you know whether the defendant kept company with your daughter in 1887?"

"State to the jury how much they went together, as near as you can."

"Do you know whether after this his attentions were broken off that spring?"

The questions were competent, but a portion of the answer to the last question was not responsive. Defendant, however, did not move to strike it out, and took no objection or exception to it.

3. Several errors are assigned upon the allowance of leading questions to the witness Nora Badder. Such questions are largely in the discretion of the trial judge, and appellate courts will reverse cases only when this discretion has been abused. *Campau v. Brown*, 48 Mich. 147. There are many cases in which counsel are justified in the use of leading questions. In determining their propriety, the circuit judge must be largely governed by the intelligence, character, or timidity of the witness. The case must be extreme to justify a reversal upon this ground. We find no such abuse in this case.

4. It was competent for plaintiff to show by the witness Nora that she yielded to defendant's solicitations under promise of marriage, and also to show subsequent acts of illicit intercourse. This is a civil case, and the rule stated in *People v. Clark*, 33 Mich. 112, a criminal prosecution for seduction, does not apply.

5. Testimony was introduced by the witness Nora tending to show that the defendant proposed to her to procure an abortion, and also by a druggist that the defendant consulted him upon the same subject. This testimony was introduced upon the plaintiff's case in chief, and before there had been any admission on the part of the defendant of sexual intercourse with Nora. This testimony was admitted as tending to show the alleged seduction. Any admissions made by him tending to show his intercourse and relations with the girl were clearly competent, and could not be rejected on the sole ground that they would tend to prejudice the jury. The

testimony had a direct bearing upon the issue, and, if true, amounted to conclusive proof of his illicit intercourse with her, without proof of which her action must, of course, have failed. Upon cross-examination the defendant, who was a witness in his own behalf, was examined in regard to this conversation with a druggist. He admitted having a conversation with the druggist similar to that testified to by him. While the judge would undoubtedly have been justified in preventing the prosecution from proceeding to the extent it did upon this cross-examination, still we do not think he went so far as to commit a prejudicial error, nor is there anything upon the record to show that this was the result.

6. It is alleged that the judge excluded evidence of the reputation of Nora Badder. This claim is based upon the following: A witness for the defense testified that he saw Nora at a dance in January, 1888, and that she was there intimate with one Baldwin. The witness was then asked to state a conversation he had with Baldwin concerning his relations with her. Two other witnesses for the defense testified that they saw Nora, Baldwin, and Keefer at several parties during the winter and spring of 1889, and that she was rude, and inclined to flirting. One of these was then asked if he heard any remarks made as to her conduct; the other witness was asked whether she was a quiet girl, or whether she was rude. This testimony was properly excluded. The first two questions were properly excluded as hearsay; the last question in no wise could affect her reputation for chastity.

We have carefully examined the charge of the court, and think that it correctly and fully covered the law applicable to the case. The law in such cases is well understood by the profession, and we deem it unnecessary to discuss it here.

The judgment should be affirmed.

MONTGOMERY, J., concurred with GRANT, J.

MORSE, C. J.   I think this case should be reversed.

I agree with Mr. Justice GRANT that it was proper to prove by the plaintiff's daughter, before the defendant had admitted the sexual intercourse, that he proposed to her to commit an abortion; and also by Dr. Kelly that the defendant consulted him as to what should be done for a young lady who was in a family way.   But the error was committed upon the cross-examination of the defendant, after the defendant had admitted the fact of illicit intercourse, but claimed that it was obtained freely, and without seductive solicitation upon his part.   Dr. Kelly had testified that the defendant came into his store, and asked him, as near as he could recollect the language,—

"What could be done for a young lady that was in a fix.   I asked him how long it had been standing.   He says: 'Some three or four months.   What would be your advice?'   Says I, 'Marry the girl; that will be your easiest way out of it.'   He steps back, and says, 'I don't have to;' and turned and walked out doors, and I the other way."

The doctor testified that he did not know who defendant was at the time, but has since learned.   On cross-examination the defendant was asked, over and over again, if he had not inquired of Dr. Kelly to find some way to get rid of the child; to kill it.   I can see no bearing that this question had on any legitimate issue in the case.   The defendant had admitted sexual intercourse and the conversation with Dr. Kelly.   Whether he wanted at that time to kill the child could have no importance upon the question of seduction, nor yet as to whether the pregnancy of the plaintiff's daughter was the result of such seduction.   The inquiry thus pressed could have but one effect upon the jury, and that to prejudice them

against the defendant, by leading them to believe that he was guilty of contemplating another and more serious crime than seduction. Whether he wanted, as he claimed, to have the girl go away and have the child, and have it taken care of, or to get rid of it by an abortion, was wholly immaterial to the issue in the case. Evidence that he proposed an abortion to the girl, or that he had any talk with Dr. Kelly, was admissible only to show the probable inference that he had had sexual intercourse with her, and might be the cause of her pregnancy. When the illicit intercourse was established by his own admission as a witness on the trial, and also the probability that he might be the father of the child, the inquiry should, in justice, have ended as to any contemplation of abortion, or his motive in going to Dr. Kelly.

In this class of cases the defendant is always under disadvantage; the sympathy is naturally in favor of the woman; and it is the duty of the courts to see that his right to a fair and impartial trial is well protected, and that the natural feeling against him is not augmented by the introduction of immaterial and irrelevant testimony, which is prejudicial to his case.

The judgment is reversed, and a new trial granted, with costs of this Court to defendant.

McGRATH and LONG, JJ., concurred with MORSE, C. J.