## RABEKE v. BAER.

1. SEDUCTION — EVIDENCE — NONACCESS OF HUSBAND—LEGITIMACY OF ISSUE.

Plaintiff in an action for seduction, who was married to a third person in April following the acts complained of, and gave birth to a child in September, cannot testify that she first met her husband in February of the year they were married, as the tendency of such testimony would be to rebut the presumption of legitimacy which obtains as to children born in lawful wedlock, and which public policy requires to be preserved.

2. SAME—ELEMENTS OF OFFENSE—EVIDENCE OF INTERCOURSE.

But she may testify to acts of intercourse with defendant, since conception is not an essential element of the cause of action.

3. Same—Defendant's Admissions of Parentage—Competency.
    And, where defendant denies ever having had intercourse
        with her, evidence of his admissions that he is the father of
        her child is also competent.

4. Same—Promise of Marriage—Conditions.
    A recovery for seduction under promise of marriage is not pre-
        vented by the fact that the promise was conditioned on the
        begetting of a child as the result of the intercourse.

Error to St. Clair; Eldredge, J., presiding. Submitted
October 15, 1897. Decided December 15, 1897.

Case by Emelie Roll Rabeke against Charles Baer for
seduction. From a judgment for plaintiff, defendant
brings error. Reversed.

*Stevens & Graham*, for appellant.

*Carl A. Wagner* (*O'Brien J. Atkinson* and *Seward
L. Merriam*, of counsel), for appellee.

Moore, J. This is an action of seduction, in which
plaintiff claims that she was seduced by defendant under
a promise of marriage. She secured a judgment, from
which an appeal is taken by defendant. It is the claim of
the plaintiff that when she was 18 years old, in June, 1890,
she entered into the employ of the defendant. Shortly after
her employment began, the wife of defendant died. It is
claimed by plaintiff that, soon after this, defendant made
improper proposals to her, and for that reason she left his
employ. She further claims that, later, defendant saw
her parents, and stated to them that he wanted the plain-
tiff to come back to work, and that he wanted to make her
his wife. She testified that the last of September, or early
in October, 1890, she again commenced working for the
defendant, and that soon afterwards he came to her and
promised to marry her as soon as his wife had been dead
sufficiently long, and accomplished her seduction, and that
he had intercourse with her frequently for several months
thereafter. Before plaintiff was allowed to testify very

much, counsel for defendant was allowed to question the plaintiff, when he elicited from her the fact that in April, 1891, she married one Rabeke, who lived with her until August, 1891, and that plaintiff gave birth to a child in September, 1891. Defendant denied that he ever had intercourse with plaintiff, and it is the claim of the defense that Rabeke was the father of the child, and that there never had been any seduction.

After the fact had been elicited of the marriage of plaintiff and the birth of the child, counsel for defendant insisted that, as plaintiff was a married woman, she was not competent as a witness in this proceeding; and it is also claimed that it was error in the court to allow her to testify that the man she afterwards married had no intercourse with her until in February, for the reason that the effect of her testimony was to bastardize issue born in wedlock, and that, for reasons of morality and public policy, such testimony was incompetent. It is urged by counsel for the plaintiff that the testimony in relation to nonintercourse between plaintiff and her husband was not drawn out by plaintiff, and that defendant cannot complain. We think counsel in error, as the record shows that plaintiff, when examined by her counsel, testified:

"During the month of October, I did not know August Rabeke, the man I afterwards married. I got acquainted with him, so far as I remember, in February, 1891."

It was the claim of the defendant that, instead of seducing plaintiff, he had no intercourse with her, and that Rabeke was the father of the child. It is evident that if plaintiff did not know Rabeke in October, 1890, and he did not get acquainted with her until in February, 1891, he could not have had intercourse with her in October, 1890; and the effect of this testimony in relation to intercourse was not different from what it would have been if witness had testified directly to the fact of nonintercourse. It is material, then, to inquire, Was it competent for the wife to testify to the nonintercourse of the

man who afterwards became her husband, in view of the fact that her child was born in wedlock, and the effect of her testimony would be to illegitimatize her offspring? Plaintiff's claim is that the principal question in the controversy is that of seduction, and the birth of the child is an incident that goes to the measure of damages, simply, and that it was competent for the wife to testify as she did. In 1 Jones, Ev. § 96, the rule is stated as follows:

"It is well settled, on grounds of public policy, affecting the children born during the marriage, as well as the parties themselves, that the presumption of legitimacy as to children born in lawful wedlock cannot be rebutted by the testimony of the husband or the wife to the effect that sexual intercourse has or has not taken place between them. * * * The rule not only excludes direct testimony concerning such intercourse, but all testimony of such husband or wife which has a tendency to prove or disprove legitimacy. For example, it was held incompetent to ask the husband, for the purpose of proving nonaccess, whether at a given time he did not live a hundred miles away from his wife. * * * The rule rests, not only on the ground that it tends to prevent family dissension, but on broad grounds of public policy. * * * Nor does it depend upon the form of action, or the parties. On the contrary, it obtains whatever the form of legal proceedings, or whoever may be the parties."

This doctrine is sustained by the uniform current of authorities, so far as I have been able to examine them. See cases cited in 1 Jones, Ev. § 96; *Dennison* v. *Page*, 72 Am. Dec. 644 (29 Pa. St. 420). See annotations to this case, where there is a very full collation of the authorities. We do not think it was competent for Mrs. Rabeke to testify to nonaccess with her husband during the period of gestation, or to a state of facts from which the inference must be drawn that she did not have intercourse with him until February. *Egbert* v. *Greenwalt*, 44 Mich. 245 (38 Am. Rep. 260).

We then come to the question, Could she testify to the fact of having intercourse with defendant? In 1 Jones, Ev. § 96, following what we have just quoted, it is said:

· "While the rule prevents the wife from testifying that she has not had intercourse with her husband, it does not prevent the wife from testifying that another person than her husband has had, or has not had, connection with her." *Com.* v. *Shepherd*, 6 Binn. 283 (6 Am. Dec. 449); *Chamberlain* v. *People*, 23 N. Y. 85 (80 Am. Dec. 255); *People* v. *Overseers of Poor*, 15 Barb. 286; 2 Am. & Eng. Enc. Law, 149. It ought not to be forgotten that this is an action for seduction. It is claimed by plaintiff that her ruin was accomplished as early as the early part of October, and the seduction might be complete, though no conception followed. We think it was competent for her to give. testimony in relation to what occurred between her and the defendant.

Objection is made to the testimony that defendant admitted that he was the father of the child. It is said that the effect of this testimony is to bastardize the child, and therefore the testimony is inadmissible. We have already seen that, for reasons of public policy, it has been held that the mother could not testify to nonaccess by the husband; but, as before stated, the primary inquiry here is, did the defendant seduce the plaintiff? We think that, in an action between the plaintiff and himself, such an admission is entirely competent. *Palmby* v. *McCleary*, 12 Ont. 192; *Badder* v. *Keefer*, 91 Mich. 611, 100 Mich. 272.

It is claimed there was no promise of marriage that should have been relied upon by the plaintiff, and that she cannot recover. It is also claimed that as the plaintiff had stated in an affidavit in bastardy proceedings that defendant promised to marry her if, as a result of the intercourse, a child was begotten, the judge erred in refusing a request that, if the jury found that the statement contained in the affidavit was true, the plaintiff could not recover. We think the rule announced in *Stoudt* v. *Shepherd*, 73 Mich. 588, is a complete answer to these contentions. It is true that the action of seduction has been hedged about by many fictions of the law, and that many cases can be found sustaining the claim of counsel. It has long been held in

this State that a debauched woman could sue in her own name for the injury. *Watson* v. *Watson*, 49 Mich. 540; *Dalman* v. *Koning*, 54 Mich. 320. It was said in the case of *Stoudt* v. *Shepherd*, by Mr. Justice CAMPBELL:

"This court recognized, what we conceive to be the recognized doctrine of experience, that seduction may be accomplished by means of influence and persuasion intended to reach, and actually reaching, the result, which do not necessarily involve either a promise of marriage or pecuniary advantage; and that such effectual persuasion, which is the active cause of it, may be as distinct a grievance as the more venal representations, which appeal to covetousness more than to excited feeling."

This case is followed in *Hallock* v. *Kinney*, 91 Mich. 57.

We do not discover any error in the record, except what we have before pointed out. Because of that error, the case is reversed, and a new trial ordered.

The other Justices concurred.