## YANOFF v. YANOFF.

1. **MARRIAGE—CIVIL CONTRACT.**
   Marriage, in the eye of the law, is a civil contract entered into by consent of the parties (3 Comp. Laws 1915, § 11363).

2. **SAME — PROCURED BY FRAUD MAY BE ANNULLED ALTHOUGH PARTIES TAKE EACH OTHER FOR BETTER OR WORSE—PRESUMPTIONS.**
   While the law recognizes a status from marital cohabitation affecting the parties, progeny and society, attaches conditions it will enforce, entails consequences not to be lightly viewed, permits the contracting parties to take each other for better or for worse, and leaves them to bear the consequences of ill-advised judgment and want of consideration, it no longer raises an irrebuttable presumption, in bar of relief by annulment of a marriage procured by the intentional fraud of the wife in representing that the husband was responsible for her pregnancy.

3. **SAME—MAY BE ANNULLED FOR FRAUD OF ONE OF THE PARTIES —NATURE OF FRAUD.**
   Marriage contracts may be annulled by judicial pronouncement for fraud perpetrated by one of the parties thereto on the other if the fraud is of a nature wholly subversive of the true essence of the relation, affects the free conduct of the wronged party, and is clearly established.

4. **SAME — WITH PREGNANT WOMAN — PRESUMPTION OF ACCESS GIVES WAY TO EVIDENCE ESTABLISHING NONACCESS.**
   Access, in the sense of sexual intercourse, is presumed, upon marriage with a pregnant woman, for the husband thereby accepts responsibility for the woman's condition,

---

[1]Marriage, 38 C. J. § 1; [2]Id., 38 C. J. §§ 61, 68; [3]Id., 38 C. J. §§ 61, 131; [4]Bastards, 7 C. J. §§ 5, 6; Marriage, 38 C. J. § 131 (Anno).

but this presumption, while a strong one, gives way to evidence establishing no antenuptial access at the time of conception.

5. SAME—NONACCESS MAY BE ESTABLISHED BY SHOWING PARTIES UNACQUAINTED.

Antenuptial nonaccess at the time the woman conceived may be established by the fact that the parties were at that time unacquainted.

6. SAME—EVIDENCE—HUSBAND AND WIFE BARRED FROM TESTIFYING AS TO ACCESS OR NONACCESS ON QUESTION OF LEGITIMACY.

When the legitimacy of a child born in lawful wedlock is involved, no matter what the form of action, the husband and wife are barred from testifying to access or nonaccess of the husband, antenuptial or postnuptial.

7. SAME—FRAUD—ANNULMENT JUSTIFIED BY EVIDENCE.

In a suit by the husband for the annulment of marriage on the ground that it was induced by the false representations of the wife that plaintiff was responsible for her pregnancy, evidence *held*, sufficient to justify decree of annulment, after striking testimony of husband and wife on the subject of access or nonaccess.

Appeal from Wayne; Merriam (De Witt H.), J. Submitted June 23, 1926. (Docket No. 55.) Decided January 4, 1927. Rehearing denied April 1, 1927.

Bill by Harry A. Yanoff against Ethel Yanoff for the annulment of a marriage on the ground of fraud. Defendant filed a bill for divorce. The cases were consolidated and heard as one. From a decree for plaintiff, defendant appeals. Affirmed.

*Behrendt & Behrendt,* for plaintiff.

*Louis Starfield Cohane* and *Regene Freund Cohane,* for defendant.

WIEST, J. Harry A. Yanoff filed a bill to annul his marriage with Ethel Yanoff on the ground of fraud in inducing him to consent thereto by falsely represent-

---

[5]Marriage, 38 C. J. § 131 (Anno); [6]Id., 38 C. J. § 131 (Anno); Witnesses, 40 Cyc. p. 2222; [7]Marriage, 38 C. J. § 131.

ing pregnancy occasioned by him.    Ethel Yanoff
countered with a bill for divorce.    The causes were
consolidated and upon the hearing the marriage was
annulled.    Ethel Yanoff appealed.

We will consider the issues under the bill for annul-
ment, for, if the decree is affirmed, there will be no
bonds of matrimony to be dissolved by divorce.    The
parties were married in the city of Detroit by the judge
of probate February 2, 1924.    At that time plaintiff
was 24 years of age and defendant 20.    The marriage
ceremony was performed by the judge of probate,
under power of a statute (3 Comp. Laws 1915, §
11387) intended to protect the reputation of females
pregnant with child, by way of marriage, with the
date thereof kept secret.    The marriage was in fact
on February 2, 1924, but was certified in a sort of
*nunc pro tunc* spirit as of August 1, 1923.    This was
done to fulfill the spirit of the statute by a date suf-
ficiently in the past to provide leeway of time for a
coming event then casting its shadow before.    In
other words, Ethel was then pregnant with child and
it was intended to have the marriage certificate dated
back far enough to cover a full period of gestation
at the advent of the baby.    Some poor calculating
was made, for the baby arrived nine days after the
marriage, was a full-term child and three months
ahead of the time so fixed for its appearance.    Under
the time schedule the parties agreed upon the baby
was not due until about May 1, 1924.    The only object
in antedating the marriage certificate was to make
it appear that the baby was conceived in wedlock.
The parties were fully cognizant of such purpose.
Each was represented by an attorney.    The essential
date was canvassed, agreed to and placed in the cer-
tificate.    Such date coincides with the testimony of
Anna Goldberg that she introduced plaintiff to de-
fendant in August, 1923, and also lends support to

237—Mich.—25.

the claim of plaintiff that he was not a roomer at the home of defendant's mother until in September, 1923, as shown by his check for rent.

At the birth of the baby plaintiff left defendant. If plaintiff first made the acquaintance of defendant in August, 1923, then he is not the father of a full-term child born February 11, 1924. That baby was conceived some time in the month of May, 1923. Just before the marriage defendant was examined by a physician and she seeks to explain the date in the certificate of marriage by his opinion that she was five or six months advanced in pregnancy. In the circuit both parties gave testimony. The objection was there made that neither party could testify to antenuptial access or nonaccess. The learned circuit judge refused to rest the decree solely upon the testimony of the parties relative to antenuptial access, but did not exclude such testimony, and, it is fair to assume, gave the same some consideration. It is insisted here, by counsel for defendant, that, the child having been born in wedlock, the plaintiff could not testify to nonaccess at the time it must have been conceived. In support of this they cite *Rabeke* v. *Baer,* 115 Mich. 328 (69 Am. St. Rep. 567) ; *People* v. *Case,* 171 Mich. 282; *Kotzke* v. *Kotzke's Estate,* 205 Mich. 184; *Brown* v. *Long Manufacturing Co.,* 213 Mich. 221; *King* v. *Peninsular Cement Co.,* 216 Mich. 335.

Counsel for plaintiff claim that right to so testify in case of antenuptial coition and pregnancy is permitted by the opinion of this court in *Gard* v. *Gard,* 204 Mich. 255 (11 A. L. R. 923). In the *Gard Case* this court decided that antenuptial sexual intercourse does not bar a husband from having annulment of the marriage, if the marriage was induced by the fraudulent representation that he was responsible for the pregnancy, when in fact the pregnancy was by another

man. But this court in that case did not decide and was not called upon to decide the question of the admissibility of testimony by a husband and wife relative to antenuptial access or nonaccess at the time of conception. That question we will now decide, although in principle it has been covered by the decisions of this court in the cases cited by defendant's counsel.

Marriage in the eye of the law is a civil contract entered into by consent of the parties (3 Comp. Laws 1915, § 11363; *People* v. *Pizzura,* 211 Mich. 71 [10 A. L. R. 405]). While the law recognizes a status from marital cohabitation, affecting the parties, progeny and society, attaches conditions it will enforce, entails consequences not to be lightly viewed, permits the contracting parties to take each other for better or for worse, and leaves them to bear the consequences of ill-advised judgment and want of consideration, it no longer raises an irrebuttable presumption, in bar of relief by annulment of a marriage procured by the intentional fraud of saddling upon a selected victim a child carried in the schemer's womb and begotten by another. Marriage contracts may be annulled by judicial pronouncement for fraud perpetrated by one of the parties thereto on the other. Such fraud, however, must be of a nature wholly subversive of the true essence of the relation, affect the free conduct of the wronged party and be clearly established. In *Gatto* v. *Gatto,* 79 N. H. 177 (106 Atl. 493), it was well said:

"But it is sometimes argued that in view of the assumed sanctity of the marriage relation and its importance to society and the State, though one may be induced by fraud to agree to the marriage ceremony, he is estopped after that event, upon discovering the fraud, to set it up in a court of equity as a ground for a decree declaring the fraudulent ceremony of no force or effect. * * * It cannot be successfully maintained upon legal principles that the marriage status, inadvertently entered into, instantaneously

operates to the advantage of the guilty party and to the serious detriment of the defrauded party, or that the interest of the State is fostered or promoted by such a result.    It would seem that public policy would denounce such a proposition as archaic and wholly unsuited to the present state of civilization and the prevailing ideas of juridical justice."

Access, in the sense of sexual intercourse, is presumed, upon marriage with a pregnant woman, for the husband thereby accepts responsibility for the woman's condition.    But this presumption, while a strong one, gives way to evidence establishing no antenuptial access at the time of conception.    The old-time four seas test no longer halts justice, and modern jurisprudence seeks the truth and uncovers fraud perpetrated in as sensible a manner as though the sham shield of marriage was nonexistent.

Antenuptial nonaccess at the time the woman conceived may be established by the fact that the parties were at that time unacquainted.    The law, however, adheres to the rule excluding both husband and wife from testifying on the subject of access or nonaccess. This leaves the proof to be made by others and admits of facts and circumstances bearing on the question and of reasonable inferences drawn therefrom.

When the baby was born, the approximate date of defendant's conception was made certain.    That baby was conceived some time during the month of May, 1923.    If plaintiff first met defendant in August, 1923, then he is not the father of that baby and there was a grave fraud perpetrated upon him in charging him with its parentage, thereby inducing him to marry defendant.

In *Westfall* v. *Westfall*, 100 Or. 224 (197 Pac. 271, 13 A. L. R. 1428), it was held, citing *Wallace* v. *Wallace*, 137 Iowa, 37 (114 N. W. 527, 14 L. R. A. [N. S.] 544, 15 Ann. Cas. 761, 126 Am. St. Rep. 253) : Bishop, Marriage, Divorce and Separation, § 1179;

Jones on Evidence, § 97; 2 Greenleaf, Evidence (16th Ed.), § 151; 3 Am. & Eng. Enc. Law (2d. Ed.), p. 879; *In re Mills' Estate,* 137 Cal. 298 (70 Pac. 91, 92 Am. St. Rep. 175) ; *Shuman* v. *Shuman,* 83 Wis. 250 (53 N. W. 455) ; *Rabeke* v. *Baer,* 115 Mich. 328 (69 Am. St. Rep. 567), that the testimony by either the wife or the husband of the nonaccess of the husband is not competent evidence to overcome the presumption of legitimacy.     In *Wallace* v. *Wallace, supra,* it was held, quoting from the syllabus:

"A child born at any time during wedlock is presumed a legitimate issue; but this may be rebutted by showing the husband incompetent, or that he had no access to the mother, or was absent during the period at which the child must have been begotten, or was present under such circumstances as clearly preclude the idea of paternity.

"In an action for divorce on the ground that the wife was pregnant by another at the time of marriage, neither the declarations nor the evidence of either spouse is competent on the question of access or nonaccess of one to the other."

When the legitimacy of a child born in lawful wedlock is involved, no matter what the form of action, the rule of law bars the husband and wife from testifying to access or nonaccess of the husband, antenuptial or postnuptial.     The rule is too well settled to be disturbed.     While much can be and has been said against this rule it is supported by the great weight of authority.     We strike out all testimony given by plaintiff and defendant upon the subject of access or nonaccess.     This leaves for consideration all other evidence in the case and we find therefrom that the marriage was brought about by falsely representing a pregnancy, with a progress from conception, within a period shown as one of access.     The pregnancy, however, was of quite nine months' instead of six months' duration and antedated an acquaintance between the parties.

The decree in the circuit is affirmed, without costs. Defendant's petition in this court for security for costs is denied.

SHARPE, C. J., and SNOW, FELLOWS, and CLARK, JJ., concurred. BIRD, STEERE, and MCDONALD, JJ., concurred in the result.