## BASSIL *v.* FORD MOTOR CO.

1. WITNESSES—PRIVILEGED COMMUNICATIONS—PHYSICIAN AND PATIENT—HUSBAND AND WIFE.

   The relation of physician and patient *held,* not the less privileged because patient's then wife was present at and consented to his examination for purpose of determining whether or not he was physically capable of begetting a child (3 Comp. Laws 1929, § 14216).

2. SAME—PRIVILEGED COMMUNICATIONS—PHYSICIAN AND PATIENT.

   The presence of one sustaining an intimate family relation with the patient when consulting a physician does not waive the privilege incident to the professional relation (3 Comp. Laws 1929, § 14216).

3. SAME—PRIVILEGE ARISES NOTWITHSTANDING CONDITION NOT SUBJECT TO TREATMENT.

   The privilege arises between a physician and his patient notwithstanding the patient's condition as disclosed is not subject to treatment (3 Comp. Laws 1929, § 14216).

4. SAME—DEATH OF PATIENT—CONTINUATION OF PRIVILEGE—WAIVER.
   After the death of a patient, the privileged matter is all the more sacred and the protection afforded his communication to a physician continues unless waived by someone authorized so to do (3 Comp. Laws 1929, § 14216).

5. SAME—PHYSICIAN-PATIENT PRIVILEGE—DEPARTMENT OF LABOR AND INDUSTRY.
   Testimony as to deceased's paternity of minor dependent, obtained by physician concerning his patient in connection with, and incident to, their professional relation, *held*, properly excluded by department of labor and industry as within the statutory physician-patient privilege (3 Comp. Laws 1929, § 14216).

6. SAME—PRIVILEGED COMMUNICATION—WAIVER—WIDOW.
   Deceased employee's widow who sought to exclude a minor boy from sharing award made because deceased was alleged not to have been the boy's father by a previous wife on ground of deceased's impotency, *held*, not entitled to waive privilege attached to communication made to physician by deceased while living with such previous wife (3 Comp. Laws 1929, § 14216).

7. WORKMEN'S COMPENSATION—PRIVILEGED COMMUNICATION—PHYSICIAN AND PATIENT.
   In proceeding to recover compensation wherein widow disputed deceased husband's paternity of boy born to previous wife, exclusion of testimony of physicians who examined deceased before conception as privileged *held*, proper, notwithstanding widow's attempted waiver of the privilege (3 Comp. Laws 1929, § 14216).

8. EVIDENCE—PARENTAGE—IMPOTENCY OF FATHER.
   On issue of deceased employee's impotency to beget child born during a previous marriage relation, proof of impotency subsequent to conception would avail nothing without that of impotency prior thereto.

9. BASTARDS—PRESUMPTIONS—EVIDENCE—HUSBAND AND WIFE.
   The presumption of the legitimacy of a child conceived and born during wedlock is so strong that it cannot be met or overcome by the testimony of either of the parents or by declarations they may have made out of court.

10. SAME—PRESUMPTIONS—EVIDENCE—ADULTERY.

Evidence of adultery of the wife at or about the commencement of the period of gestation is not sufficient to overcome the presumption of the legitimacy of a child conceived and born during wedlock.

Appeal from Department of Labor and Industry. Submitted October 21, 1936. (Docket No. 101, Calendar No. 39,155.)   Decided December 9, 1936.

Helen Bassil, widow, and James Bassil, minor, and another presented their claim for compensation against Ford Motor Company for death of Naef Bassil caused by accidental injuries. From award made, plaintiff Helen Bassil appeals. Affirmed.

*J. F. Youssephany (Monaghan, Crowley, Clark & Kellogg* and *Edward T. Kelley,* of counsel), for plaintiff Helen Bassil.

*Jorgensen, Alexander & Matheny,* for plaintiff James Bassil.

NORTH, C. J. Naef Bassil was an employee of the Ford Motor Company. He suffered an accidental injury which resulted in his death and an award of $18 per week for 300 weeks, together with an allowance for funeral expenses, was made by the department of labor and industry. The department found that the plaintiff Helen Bassil, hereinafter referred to as the widow, and a minor child, James Bassil, were each total dependents and ordered that the award should be divided equally between the two. This minor child was born during the period of wedlock of Naef Bassil and his former wife Nazira Bassil, who subsequently obtained a divorce from Naef Bassil and married George Hajjar. The widow

claimed and sought to prove that Naef Bassil was not the father of the minor child, but instead that this child was conceived in consequence of the adulterous relation of the employee's former wife and her present husband. If the widow's contention were established she could claim the whole of the award. The department found against the widow and she has appealed.

The first question presented involves the widow's contention that the department erred in excluding testimony offered by appellant which she claimed would prove or tend to prove that the minor child was not the son of Naef Bassil. She offered to show by the testimony of two physicians who had examined the deceased, one of them having examined him both before and after the conception and birth of the minor child, that Naef Bassil was physically incapable of begetting a child; by the testimony of members of the family that it was generally reputed among them that Naef Bassil was not the father of the minor; and to establish this same alleged fact by declarations made by Naef Bassil during his lifetime, and by admissions of the minor's mother that she was guilty of adultery at or about the time the minor child was conceived.

The testimony of the two physicians was excluded on the ground that it was privileged. Appellant claims it was not privileged both on the ground that the information was not obtained by the physicians under such conditions as render it privileged within the provisions of the pertinent statute, and further that the protection of the statute, if any, was waived because the communication to the physician was in the presence of a third party, i. e., Bassil's first wife. We quote the statute in part:

"No person duly authorized to practice medicine or surgery shall be allowed to disclose any information which he may have acquired in attending any patient in his professional character, and which information was necessary to enable him to prescribe for such patient as a physician, or to do any act for him as a surgeon." 3 Comp. Laws 1929, § 14216.

On this phase of the case the following facts are pertinent: While Naef Bassil and his first wife were living together the two went to a physician for the purpose of ascertaining why the wife did not become pregnant and the physician made an examination of the reproductive organs of the husband for the purpose of ascertaining his condition. The physician was given a history of the patient by which it was revealed that the latter many years prior to the examination had gonorrhea and double epididymitis. The examination disclosed that as a result of the gonorrhea Bassil had become physically incapable of begetting a child. Incident to determining Bassil's condition in the particular above noted the doctor made two or three tests within a few days following the first visit, which was in January, 1926. The minor, whose parentage is in question, was born May 1, 1927. Subsequent to the birth of this child Bassil was again examined by the physician whom he had formerly consulted and also by another physician. The result of these subsequent examinations confirmed the conclusion reached at the first. In contending that the information obtained by the physicians was not privileged, appellant states in her brief:

"The examinations were procured at the instance of Nazira Hajjar and are not privileged because made in her presence and with her consent.

"The examinations were made merely for the purpose of ascertaining the condition of the deceased and not for the purpose of treatment; and the privilege is not available under such circumstances.

"The plaintiff (the widow) has a right to and did waive the privilege on behalf of the deceased."

None of these contentions can be sustained. The presence of Bassil's first wife with whom he was then living did not waive the privilege.

"It has been the policy of the legislature and the courts of this State to protect this privilege." *Gilchrist* v. *Mystic Workers of the World,* 188 Mich. 466, 476 (Ann. Cas. 1918 C, 757).

The presence of one sustaining an intimate family relation with the patient when consulting a physician should not and does not waive the privilege. *Denaro* v. *Prudential Ins. Co. of America,* 154 App. Div. 840 (139 N. Y. Supp. 758) ; *Indiana Union Traction Co.* v. *Thomas,* 44 Ind. App. 468 (88 N. E. 356).

Appellant's counsel stresses the contention that the knowledge obtained by a physician concerning a patient was not privileged at common law, that the privilege exists only by virtue of the statute and, therefore, does not exist except it comes within the express provisions of the statute. It is on this ground appellant contends that since the offer of proof contained the assertion that Bassil and his wife went to the physician for examination only, not for treatment, the information obtained by the doctor is not privileged. *In re Bruendl's Will,* 102 Wis. 45 (78 N. W. 169), is cited. It may be noted it conclusively appears in the *Bruendl Case* that the matter of treatment by the physician was wholly foreign to the purpose of the visit. No treatment was con-

templated. Instead the woman examined sought to establish that her mentality was such that a guardianship over her should be removed. In the instant case Bassil and his wife went to the physician for the purpose of ascertaining why a child or children were not born of their union. Confidential communications followed, as well as several examinations and tests from which it was ascertained that Bassil was incurably impotent. Obviously Bassil and his wife were desirous of having offspring and the inference necessarily arises that if curative or remedial measures were available such were contemplated. The privilege arises between a physician and his patient notwithstanding the patient's condition as disclosed is not subject to treatment. *Grattan* v. *Metropolitan Life Ins. Co.,* 24 Hun (31 N. Y. Sup. Ct.) 43. Consideration of *People* v. *Glover,* 71 Mich. 303, cited in appellant's brief, discloses that it is also clearly distinguishable on the same ground as the *Bruendl Case.* In the instant case the patient examined subsequently died. After the death of a patient the privileged matter is all the more sacred and the protection which is that of the patient continues unless waived by someone authorized so to do. *Thomas* v. *Township of Byron,* 168 Mich. 593 (38 L. R. A. [N. S.] 1186, Ann. Cas. 1913 C, 686); *Matter of Myer,* 184 N. Y. 54 (76 N. E. 920, 6 Ann. Cas. 26).

The testimony offered in behalf of appellant consisted wholly of information obtained by the physician concerning his patient in connection with and incident to their professional relation. The circumstances of this case are such that the testimony excluded by the department is within the statutory physician-patient privilege. *Grattan* v. *Metropolitan Life Ins. Co., supra.* Unless waived, the ruling was correct. Appellant's contention that she had the

right to waive and did waive the privilege on behalf of deceased, under the circumstances of this case is clearly untenable. She does not come within any of the statutory provisions providing for waiver in this State.

Our consideration of the question of privilege has been directed more particularly to the relation of physician and patient which preceded the conception and birth of the minor whose parentage is in issue. Proof of subsequent impotency would avail nothing without that of impotency prior to the child's birth. The ruling of the department excluding the testimony of the physicians is sustained.

The offer to show the general reputation as to the parentage of the minor consisted of an offer to prove declarations by both Naef Bassil and Nazira Bassil that the child was not begotten of Naef Bassil but instead that he was the child of George Hajjar. In this connection appellant offered to show that Nazira "kept company with George Hajjar" prior to her conception of the child James. Courts have been uniform in holding that there is a very strong presumption of the legitimacy of a child conceived and born during wedlock. This court has held the presumption is so strong that it cannot be met or overcome by the testimony of either of the parents.

"The rule seems to be well established that neither the father nor the mother can testify to the illegitimacy of the child. See *Egbert* v. *Greenwalt,* 44 Mich. 245 (38 Am. Rep. 260); *Rabeke* v. *Baer,* 115 Mich. 328 (69 Am. St. Rep. 567); *People* v. *Case,* 171 Mich. 282. It was held distinctly in the last cited case that the presumption of legitimacy cannot be overcome by the testimony of either the husband or wife." *King* v. *Peninsular Portland Cement Co.,* 216 Mich. 335.

See, also *Yanoff* v. *Yanoff*, 237 Mich. 383.

Surely if neither parent can testify that a child born in wedlock is illegitimate, the declaration of such parent made out of court would not be admissible. It would be equally contrary to public policy to receive proof of such declaration. Further, if the presumption is so strong as not to be met or overcome by testimony of the character above noted, it should be held the testimony offered by appellant that the mother "kept company" with some man other than her husband about the time the child was conceived would not be decisive.

"And evidence of the adultery of the wife at or about the commencement of the period of gestation is not sufficient to overcome the presumption." *People* v. *Case,* 171 Mich. 282.

There was no error in the holding of the department that the testimony offered by appellant was inadmissible.

The award of the department was proper and must be affirmed. Costs to appellee.

FEAD, WIEST, BUTZEL, BUSHNELL, SHARPE and TOY, JJ., concurred. POTTER, J., did not sit.