## MAXWELL *v.* MAXWELL

1. DIVORCE — SUPPORT OF CHILDREN — AMENDMENT OF JUDGMENT —
   EVIDENCE — PATERNITY OF CHILD.

   Trial court's rejection, in an action to modify a divorce judg-
   ment to provide for support payments for a child born after
   the divorce, of testimony from either the husband or the wife
   regarding access or non-access of the husband to the wife at
   the time of conception, and of testimony about extrajudicial
   statements made by the wife to the effect that someone else
   was the father of the child *held,* proper even though it was
   established that the time of conception was after the parties
   were living apart and a complaint for divorce had been filed.

2. EVIDENCE—PRESUMPTION—LEGITIMACY OF CHILDREN.

   The presumption of the legitimacy of children is rebuttable and
   there is no absolute rule or policy against the receipt of evi-
   dence inconsistent with the presumption.

3. APPEAL AND ERROR—REVIEWING FUNCTION OF COURT OF APPEALS.

   Trial court's exclusion of testimony by either the ex-husband or
   the ex-wife about access or non-access of the husband to the
   wife at the time of conception of a child born to the wife
   after the parties were divorced, and rejection of testimony
   about extrajudicial statements made by the wife to the effect
   that a man other than her ex-husband was the father of the
   child, was proper under established precedents in this state;
   if the rule is to be modified it must be done by the Supreme
   Court.

Appeal from Wayne, Montante (James), J.  Sub-
mitted Division 1 March 3, 1968, at Detroit.  (Docket

REFERENCES FOR POINTS IN HEADNOTES

[1] 24 Am Jur 2d, Divorce and Separation §§ 370, 412, 861, 876
*et seq.*
[2] 10 Am Jur 2d, Bastards § 15.
[3] 20 Am Jur 2d, Courts § 231.

No. 3,711.)  Decided January 30, 1969.  Leave to
appeal denied April 15, 1969.  See 381 Mich 815.

Complaint by Truman F. Maxwell against Sandra
L. Maxwell for divorce.  Judgment for plaintiff.
Motion by defendant for supplemental judgment of
support for an additional child.  Judgment for de-
fendant.  Plaintiff appeals.  Affirmed.

*Robert P. Temp,* for plaintiff.

*Allan H. Tushman,* for defendant.

LEVIN, J.  Plaintiff Truman F. Maxwell appeals
a supplemental judgment of divorce granting de-
fendant Sandra L. Maxwell $35 per week support for
a child born to her after the parties were divorced.[1]

The full-term baby was born October 13, 1963.
This was some 15 months after the parties separ-
ated (July 18, 1962), 11 months after plaintiff filed
his complaint for divorce (September 12, 1962) and
nearly 7 months after the judgment of divorce was
entered (March 19, 1963).

At the hearing on defendant's petition that plain-
tiff be required to support the child, witnesses testi-
fied that during the time the child presumably was
conceived the defendant was living with a boyfriend
in her parents' apartment.  A number of witnesses
testified that the defendant told them the boyfriend
was the child's father.  The defendant testified,
the plaintiff denied, that they had sexual intercourse
together after the complaint for divorce was filed.

After completion of the testimonial hearing and
the submission of briefs on the law, the trial judge
delivered his opinion finding that the plaintiff was

---

[1] The Maxwells were married on October 17, 1961, and divorced 17
months later on March 19, 1963.

the child's father.  The judge carefully reviewed the
testimony and decisions of the Michigan Supreme
Court and then explained in detail the reasons for his
decision.

The judge stated that he considered himself bound
by Michigan Supreme Court decisions to exclude
from consideration all testimony of the plaintiff
husband and the defendant wife regarding the plain-
tiff's access or nonaccess to the defendant and all
the testimony concerning extrajudicial statements
by the defendant as to who fathered the child.  This
left only the evidence that the defendant was carry-
ing on a steady, intimate relationship with another
man during the period when the child was con-
ceived.[2]  In the trial judge's opinion the possibility
that the child was conceived in that union was not
enough to overcome the presumption that a child
conceived in wedlock is the legitimate issue of the
marriage.

On this appeal no claim is made that the judge's
finding that plaintiff fathered the child was, as such,
clearly erroneous.  The only question before us is
whether the judge correctly refused to consider in
deciding the dispute the testimony of the plaintiff
husband and defendant wife and of those who
claimed to have heard her say that the boyfriend
was the father.

The rule of law applied by the trial judge in ex-
cluding from consideration the judicial and extra-
judicial declarations of the parties is known as Lord
Mansfield's rule—to its critics as Lord Mansfield's
dictum.  Described by Professor McCormick as a

---

[2] The trial judge viewed the child and commented on the resem-
blance of the plaintiff and the child which he found to be striking.
However, he said he did not base his finding that plaintiff fathered
the child on such resemblance.  He remarked that he knew of adopted
children who resembled their adopting parents more than natural
offspring of the same parents.

rule of "eccentric incompetency"[3] and generally condemned by most writers,[4] Mansfield's famous declaration was made in 1777 in an ejectment case where the issue of legitimacy of the claimant was raised:

"the declarations of a father or mother cannot be admitted to bastardize the issue born after marriage. * * *

"it is a rule founded in decency, morality, and policy, that they shall not be permitted to say after marriage that they have had no connection, and therefore that the offspring is spurious." *Goodright v. Moss* (1777), 2 Cowp 591 (98 Eng Rep 1257).

Dean Wigmore tells us that the rule traveled to the United States in the treatises of the early 1800s and was accepted by most courts unquestioningly.[5]

It made its debut in Michigan in *Egbert v. Greenwalt* (1880), 44 Mich 245, 248 (38 Am Rep 260) and, despite its having barely passed the century mark, was described as "an ancient rule of the common law." The rule has been applied in Michigan in a variety of cases.[6]

---

[3] McCormick on Evidence, § 67, p 146; McCormick declared that Mansfield's pronouncement was "new-minted doctrine."

Dean Wigmore wrote that Mansfield's rule was without precedential authority save the twisted rendering of the then rule that in filiation proceedings a wife's testimony against a man not her husband must be corroborated by other evidence. 7 Wigmore on Evidence (3d ed), § 2063, p 359.

[4] 7 Wigmore on Evidence (3d ed), §§ 2063, 2064, p 358, *et seq.*; McCormick on Evidence, § 67, pp 145, 146.

The following articles criticize the rule: Bell, Competency of a husband and wife to testify as to nonaccess, 21 Temp L Q 217 (1948); Comment, The "Lord Mansfield Rule" and the presumption of legitimacy, 16 Md L Rev 336 (1956); Comment, The "Lord Mansfield Rule" as to "bastardizing the issue," 3 Md L Rev 78 (1938); Comment, The admissibility of a parent's testimony as to nonaccess to prove illegitimacy, 73 U Pa L Rev 71 (1924); Comment, 19 Ill L Rev 280 (1924).

[5] 7 Wigmore on Evidence (3d ed), § 2063, p 358.

[6] *People v. Case* (1912), 171 Mich 282; *People v. Bedell* (1955), 342 Mich 398 (filiation proceedings); *Magarell v. Magarell* (1950), 327 Mich 372 (action for divorce); *Yanoff v. Yanoff* (1927), 237 Mich 383 (action for annulment); *In re Wright's Estate*

The rule as enunciated by Mansfield literally barred only testimony proving "no connection," *i.e., non*access by the husband to the wife, and did not preclude testimony showing that a husband did in fact have access to his wife or that she had access to another man.

In *Yanoff* v. *Yanoff* (1927), 237 Mich 383, the Michigan Supreme Court ruled that Mrs. Yanoff could not testify that she had intercourse with her husband prior to their marriage and that Mr. Yanoff could not testify that there was no premarital connection. The *Yanoff* Court declared (p 389):

"When the legitimacy of a child born in lawful wedlock is involved, no matter what the form of action, the rule of law bars the husband and wife from testifying to *access or nonaccess* of the husband, antenuptial or postnuptial."[7]     (Emphasis supplied.)

In *Bassil* v. *Ford Motor Co.* (1936), 278 Mich 173, 180 (107 ALR 1491), the Court ruled that the presumption of legitimacy could not be "met or overcome by the testimony of either of the parents," and reasoned that the prohibition applied not only to their judicial statements but as well to repetition of their out-of-court declarations. Similarly, see *King* v. *Peninsular Portland Cement Co.* (1921), 216 Mich 335, 339; *Magarell* v. *Magarell* (1950), 327 Mich 372, 376.

Later, in *People* v. *Bedell* (1955), 342 Mich 398, the Court ruled that the wife may not testify that a man other than her husband was the father of the

(1927), 237 Mich 375 (determination of heirs); *King* v. *Peninsular Portland Cement Co.* (1921), 216 Mich 335; *Bassil* v. *Ford Motor Co.* (1936), 278 Mich 173 (107 ALR 1491) (workmen's compensation proceedings); *Rabeke* v. *Baer* (1897), 115 Mich 328 (action for seduction); *Egbert* v. *Greenwalt* (1880), 44 Mich 245 (action for criminal conversation).

[7] Despite the statements in *Yanoff* barring testimony showing access, the Supreme Court, in a later case, has given weight to spousal testimony showing access without expressly ruling it admissible. *People* v. *Bedell* (1955), 342 Mich 398.

child.   This ruling was preceded by *King* v. *Peninsular Portland Cement Co.*, *supra,* where the Court sustained the lower tribunal's refusal to consider the wife's extrajudicial or judicial declaration that the husband was not the father and by *Zakrzewski* v. *Zakrzewski* (1927), 237 Mich 459, 462, where the Court stated that Mansfield's rule prohibits the husband from repeating the wife's alleged statement that another man fathered the child.

Thus, the rule barring either husband or wife from saying that the wife did not have or could not have had intercourse with her husband was expanded to prohibit their testimony that she did have intercourse with her husband or with another man.[8]

We recognize that in some, mostly early, cases the Supreme Court acknowledged that Mansfield's rule does not prevent testimony that the wife had relations with another man (*Rabeke* v. *Baer* [1897] 115 Mich 328, 331, 332 [69 Am St Rep 567]; People v. Case [1912], 171 Mich 282, 285) or repetition of her extrajudicial declarations as to who was the father (*In re Wright's Estate* [1927], 237 Mich 375, 382).[9] We might possibly distinguish or reconcile some of

---

[8] While it would appear that many jurisdictions still follow Lord Mansfield's rule as originally stated, *i.e.*, neither the husband nor the wife may testify to nonaccess between them, there is more diversity as to the admissibility of testimony showing access of the husband to the wife (10 Am Jur 2d, Bastards, §§ 33, 34, pp 869, 870) and it is generally held that the wife may testify to illicit intercourse with another man (10 Am Jur 2d, Bastards, § 35, pp 870, 871).   See, also, 3 Jones on Evidence (5th ed), § 799, pp 1497–1499.

[9] A majority of the *Wright* court held that the husband's testimony as to nonaccess or as to facts tending to establish nonaccess was properly rejected, but that it was error to exclude statements made by the mother of the child during her lifetime to the effect that Mr. Wright was the father of the child (p 382) "which were admissible on the question of pedigree."   The pedigree exception to the hearsay rule is also considered in 10 Am Jur 2d, Bastards, § 38, pp 872, 873.

See, also, Annotation: Admissibility, on issue of child's legitimacy or parentage, of declarations of parents, relatives, or the child, deceased or unavailable.   31 ALR2d 989.

the earlier with the later pronouncements.[10] But whether we could or not, we must follow the more recent declarations of our Supreme Court which seem clear enough on the issue which faces us today.

We are also aware that other State courts have construed general statutes abolishing the incompetency of witnesses as legislatively overruling Mansfield's rule.[11] However, the Michigan Supreme Court expressly declined so to interpret our corresponding legislation.[12] The rule in Michigan has also survived presentation and consideration of Dean Wigmore's vigorous criticisms. *In re Wright's*

---

[10] The statements in *Rabeke* and *Egbert* to the effect that the wife may testify to connection with another man could be distinguished on the ground that those actions were brought for an injury done the wife or her husband, for seduction in *Rabeke* and for criminal conversation in *Egbert*.

That, of course, would not distinguish *People* v. *Case, supra*, a filiation proceeding. It will be noted that *Bedell*, where the Court more recently refused to allow the wife to testify regarding the parentage of the child, was, like *Case*, a filiation proceeding and like *People* v. *Case* and the instant case an action seeking support for the child.

[11] *Evans* v. *State, ex rel. Freeman*, (1905), 165 Ind 369 (74 NE 244); *on rehearing*, 165 Ind 372 (75 NE 651); *Re Estate of McNamara* (1919), 181 Cal 82 (183 P 552, 7 ALR 313, 325); *State* v. *Soyka* (1930), 181 Minn 533 (233 NW 300); *Loudon* v. *Loudon* (1933), 114 NJ Eq 242 (168 A 840, 89 ALR 904, 909); *In re Wray's Estate* (1933), 93 Mont 525 (19 P2d 1051); *Gibbons* v. *Maryland Casualty Co.* (1966), 114 Ga App 788 (152 SE2d 815). See, generally, 10 Am Jur 2d, Bastards, § 38, pp 872, 873.

At least 4 States have eliminated Lord Mansfield's rule by statute: Family Court Act, Laws 1962, ch 686, § 531 (29A McKinney's Consolidated Laws of NY Anno., § 531); Tennessee, St 1955, Mar 15, c 186, § 6 (Tennessee Code Anno. 1968 Cum Supp § 36–227[1]); G L (Ter ed) c 275, § 7 (9A Anno. Laws of Mass, c 273, § 7); and Maryland, Code, Art 16, § 66 F(b). Maryland's statute was broadened in application by *Shelley* v. *Smith* (1968), 249 Md 619 (241 A2d 682).

Of interest is the fact that this rule of law which we imported from England is no longer the law in England, having been abolished by statute. Statutes 1949, 12, 13 and 14 George VI, ch 100; Law Reform (Misc Provisions) Act 1949, § 7. Similar provisions are contained in St 1950, 14 George VI, ch 25 (Matrimonial Causes act) 1950, § 32.

[12] *Egbert* v. *Greenwalt* (1880), 44 Mich 245, 248, commenting on the amendments to CL 1857, § 4342 enacted by PA 1861, No 125, which, as amended from time to time, now appears as MCLA, § 600-.2162 (Stat Ann 1962 Rev § 27A.2162).

*Estate, supra,* p 381; *Yanoff* v. *Yanoff, supra,* p 389.[13]

While some State courts have refused to adopt[14] or have overruled their earlier decisions adopting the Mansfield rule,[15] there is as yet no clear trend of decision and, most important, the arguments against the rule have been considered and rejected by our Supreme Court.

Truman Maxwell's counsel suggests that the rule should at least be abolished where the time of conception of the child can be established to have been subsequent to the separation of the husband and wife or at least for those cases, such as this one, where conception followed the filing of a complaint for divorce. Controlling precedent precludes us from making such an exception.[16]

---

[13] It is true that the *Yanoff* Court put its rejection of Dean Wigmore's criticism on fairly insubstantial grounds, *i.e.*, that the rule was "too well-settled to be disturbed" and while much could be said against it, "it is supported by the great weight of authority." Nevertheless, the Court did consider and reject the arguments against the rule and its decision, although over 40 years old, having been made after apparently careful consideration of the arguments against the rule, is binding upon us. *Cf. Abendschein* v. *Farrell* (1968), 11 Mich App 662, 681 (LEVIN, J. dissenting).

[14] *Moore* v. *Smith* (1937), 178 Miss 383 (172 So 317).

[15] *Ventresco* v. *Bushey* (1963), 159 Me 241 (191 A2d 104); *Yerian* v. *Brinker* (Ohio App, 1941), 35 NE2d 878; *In re Adoption of a Minor* (1948), 29 Wash 2d 759 (189 P2d 458); *Peters* v. *District of Columbia* (DC Mun Ct App, 1951), 84 A2d 115; *Vasquez* v. *Esquibel* (1959), 141 Colo 5 (346 P2d 293); *Lynch* v. *Rosenberger* (1926), 121 Kan 601 (249 P 682, 60 ALR 376).

Both the National Conference of Commissioners on Uniform State Laws and the American Law Institute have proposed evidence acts the adoption of which would abolish Lord Mansfield's rule. Rule 17 of the Uniform Rules of Evidence act and rule 101 of the Model Code of Evidence state that every person is qualified to be a witness unless the judge finds that he is incapable of making himself understood or of understanding the duty of a witness to tell the truth. As to the exception to the hearsay rule for statements concerning the family history of another, see rule 63(24) of the uniform act and rule 524 of the model act.

[16] In *People* v. *Bedell, supra,* Mansfield's rule was applied and extended even though an interlocutory decree of divorce had been entered before conception. Accordingly, we cannot say that the rule does not apply where the child is conceived after the filing of a complaint for divorce.

Today divorce is more prevalent and a decree more readily obtainable than in Mansfield's time.[17] The Maxwells separated 9 months after they were married and were divorced 8 months later. Almost half their formal married life followed their separation. Yet, since neither blood tests nor physical impotency acquitted Truman Maxwell, he was, for all practical purposes, the guarantor of his wife's chastity during the period his complaint for divorce was pending even though his ability to supervise his wife's conduct was nil and, as the record suggests, her personal life was fully occupied although the bonds of matrimony remained unsevered.

There are frequent statements in the cases to the effect that the rule barring admission of spousal testimony is based on considerations of public policy,[18] but there is little or no discussion in the cases of what policy considerations might be involved.

While there is a policy which favors legitimation of children conceived or born in wedlock, that policy is adequately expressed in the presumption of legitimacy. That presumption is not irrebutable. *Magarell* v. *Magarell, supra; Wechsler* v. *Mroczkowski* (1958), 351 Mich 483, 489. Thus, there is no absolute rule or policy against the receipt of evidence inconsistent with the presumption. If the purpose of retaining Mansfield's rule is to prevent overcoming the presumption by spousal declarations alone, then the rule should be modified to say just that, and should no longer prevent consideration of spousal declarations together with other evidence which together might be enough to overcome the presumption.

---

[17] Nelson, Divorce and Annulment (2d ed), § 1.01, pp 1–5; 17 Am Jur, Divorce and Separation (Rev), §§ 5 and 6, pp 256, 257.
[18] *Egbert* v. *Greenwalt, supra*, p 248; *People* v. *Bedell, supra*, p 403; *Bassil* v. *Ford Motor Co., supra*, p 181.

If it be said that the policy involved is the policy which favors preservation of marriage, then that would be a good reason for continuation of the Mansfield rule, modified so as to bar only declarations during the marriage. Such a modification of the rule would prevent testimony by either husband or wife while they were married in any proceedings including divorce proceedings, or repetition by others of any declarations alleged to have been made by either of them while they were married, but would not prevent them from testifying in court, after the marriage has been dissolved, or repetition by other persons of declarations alleged to have been made to such other persons after the bonds of matrimony have been severed.

A rule continuing the inadmissibility of pre-final divorce decree declarations of husband and wife would prevent their testifying regarding the legitimacy of a child whose conception is brought to the attention of the court before entry of the decree.

It is difficult to see, however, what public policy should prevent the receipt in evidence of spousal declarations in the kind of case which today confronts us. The Maxwell marriage was dissolved long before defendant's petition for child support was filed. The legitimacy of the child is reasonably protected by the presumption of legitimacy, one of the strongest presumptions known to the law. (See footnote 19.) There could have been no adverse effect on the marriage of Truman and Sandra Maxwell to have received in evidence in February, 1967, their testimony and the testimony of the other witnesses concerning her alleged declarations made to them after March 19, 1963, the date the marriage was dissolved.

What is often forgotten about Lord Mansfield's rule is that its modification or abolition would not

affect the very strong presumption of legitimacy, a presumption so strong that it has been said that it could not fail "unless common sense and reason are outraged by a holding that it abides." *In re Findlay* (1930), 253 NY 1 (170 NE 471, 573), per Cardozo, C. J.

Some courts insist that the presumption is so strong that it may not be overcome unless the trier is convinced beyond a reasonable doubt that the child is illegitimate (*Ventresco* v. *Bushey* [1963], 159 Me 241 [191 A2d 104], citing other cases so holding, p 109). Adoption of the "beyond a reasonable doubt" standard might go a long way to ease the fears of those who think it important, from the child's point of view, to retain the Mansfield rule as originally stated and subsequently embellished.[19]

If the decree of divorce does not recognize the child as an offspring of the marriage, the fact that

---

[19] Rule 703 of the model code of evidence promulgated by the American Law Institute would require one seeking to overcome the presumption of legitimacy to persuade the trier of fact beyond a reasonable doubt. The comment following the rule states that the standard so proposed is widely accepted, adding however, that the "clear and convincing" evidence standard is often applied. The comment continues:

"Strong reasons of policy require that a child born in wedlock be treated as legitimate; therefore the clearest proof of illegitimacy should be necessary. Consequently, the rule calls for the measure of persuasion usually required in a criminal action."

Our Supreme Court has declared that the presumption of legitimacy "is one of the strongest presumptions in the law" and that the presumption can only be overcome by "proof which is very convincing." *People* v. *Case* (1912), 171 Mich 282, 284.

In *Egbert* v. *Greenwalt, supra,* the Michigan Supreme Court discussed the presumption of legitimacy. It stated that the then current of authority was that it could "be overcome by admissible facts and circumstances of such cogency as to render belief necessary" (p 249) and went on to discuss other standards, concluding with the following observation (p 250):

"To overcome the presumption and disprove intercourse there must be cogent facts and circumstances: [citations omitted]; in *Stegall* v. *Stegall* Chief Justice Marshall held that whilst it was not necessary to make out that connection was not possible, it was proper that the evidence should establish its non-occurrence beyond all reasonable doubt (2 Brock 256)".

the child might be of the marriage will not ordinarily become known unless the wife, as in this case, seeks a supplemental allowance. If she does, she, no doubt, will testify that the child was fathered by her former husband. Her testimony, together with the strong presumption of legitimacy, is likely to present a most formidable case.[20] If the husband can yet persuade, reason suggests that he probably should be permitted to prevail. However, if that is to become the law of this State, the Supreme Court must modify precedent which controlled the deliberations of the trial judge and which controls ours as well.

Affirmed. Costs to appellee.

LESINSKI, C. J., concurred with LEVIN, J.

ANDREWS, J., concurred in the result.

---

[20] Cases holding that the presumption is not overcome by evidence that the wife had intercourse with another man are *People* v. *Case* (1912), 171 Mich 283, 285; *Egbert* v. *Greenwalt* (1880), 44 Mich 245, 250; *Bassil* v. *Ford Motor Co.* (1936), 278 Mich 173, 181.