Kelly, J.
(concurring in part and dissenting in part). I agree with the result reached by the majority in this case. However, I disagree with the majority’s *204 reliance on MCR 5.921(D). I also disagree with its glancing reliance on the policy underlying the Paternity Act[1] to support its decision.
I. MCR 5.921(D) PER SE DOES NOT ADDRESS STANDING
The majority spends little time analyzing MCR 5.921 and makes no effort to address the rule’s relation to the requirements for intervention. Nevertheless, it holds that MCR 5.921 controls whether Mr. Heier has standing in this case. This conclusion is erroneous.
In interpreting and applying court rules, we apply the standard rules of statutory construction. Accordingly, our primary purpose is to accurately interpret the meaning of the language of a rule. Grievance Administrator v Underwood, 462 Mich 188, 193-194; 612 NW2d 116 (2000).
Notably, the text of MCR 5.921 does not explicitly address standing to intervene. Rather, it designates the persons who must be given notice before child protective proceedings can go forward. In this respect, the rule is no different from others requiring notice be given to interested parties.
In general, notice is not required for persons who merely have an interest that might be affected by the outcome of the case. Rather, a person is allowed to intervene if (1) he timely claims an interest that is related to the subject of the proceedings, (2) the disposition of the action may impair his ability to protect his interest, and (3) his interest is inadequately represented by the existing parties. MCR 2.209.
*205 However, in listing the categories of persons who require notice, MCR 5.921 does not state that all others are disallowed from inserting themselves into a termination dispute. Accordingly, I believe that the majority is incorrect in holding that the rule precluded Mr. Heier’s intervention in this matter.
II. THE MAJORITY’S POLICY ARGUMENT IS ILL-CONCEIVED
Although the majority rests its holding primarily on the notion that Mr. Heier’s claims are barred by MCR 5.921(D), it has attempted to fortify its reasoning by alluding to public policy. It asserts that the public policy considerations underlying the enactment of the Paternity Act also underlie child protective proceedings. Again, I disagree.
The public policy objective of the Paternity Act is to ensure that all children are provided with support and education. Crego v Coleman, 463 Mich 248, 269; 615 NW2d 218 (2000), citing Whybra v Gustafson, 365 Mich 396, 400; 112 NW2d 503 (1961). The objective would be frustrated if a “legal” father were able to abandon his duty of support as the result of unfounded allegations of paternity. Hence, before an action can be sustained under the Paternity Act, a determination must be made that the child in question was bom out of wedlock, MCL 722.711(a); Girard v Wagenmaker, 437 Mich 231; 470 NW2d 372 (1991).
By contrast, the purpose of termination proceedings under the juvenile code is to assure a child of care, guidance, and control conducive to his welfare and the interest of the state. MCL 712A.1(3). Accordingly, when a child is removed from his parents, the *206 court must provide him with care that approximates the care his parents should have provided. Id. Thus, the two acts serve different masters. A person must not blindly assume that a single public policy consideration fulfills their distinct purposes.
Similarly, the majority’s reliance on our opinion in Serafin v Serafin[2] is unsuited to this case. Serafín did not address the statutes or court rules at issue here. Instead, it held that Lord Mansfield’s Rule, a common-law rule of evidence, was no longer viable in Michigan.
It is true that Serafín observed that children remain “guarded by [a] still viable and strong . . . presumption of legitimacy” that can be rebutted only by clear and convincing evidence. Serafin, 401 Mich 636, citing Maxwell v Maxwell, 15 Mich App 607, 617; 167 NW2d 114 (1969). Yet, Serafín goes on to rebuke a too dogged pursuit of the presumption of legitimacy rule:
“If the function of a court is to find the truth of a matter so that justice might be done, then a rule which absolutely excludes the best possible evidence of a matter in issue rather than allow it to be weighed by the trier of fact must necessarily lead to injustice. Further, when a court voluntarily blindfolds itself to what every citizen can see, the public must justifiably question the administration of law to just that extent.” [Serafin, supra at 635-636, quoting Davis v Davis, 507 SW2d 841, 847 (Tex Civ App, 1974), rev’d on other grounds 521 SW2d 603 (1975).]
In accordance with that rationale, I do not agree that the presumption of legitimacy rule has persuasive force in this case. Certainly, the majority would *207 not advance the argument that this rule protects the sanctity of CAW’s family unit. That proposition is absurd in the context of termination proceedings, the object of which is to destroy any familial bond between a child and the parent whose rights are being terminated.
Similarly, the policy cannot be advanced on the basis that it furthers the goals expressed in the juvenile code. Rigid application of the presumption of legitimacy would frustrate the code’s preference for placing a child with his parent, if the parent is willing and able to care for him. For example, if Heier were a fit biological parent of CAW, rigid application of the presumption relied on by the majority would prevent the court from placing CAW with him.
III. RESOLUTION
Ultimately, the question here is whether the circuit court was correct in denying Mr. Heier’s petition to intervene. The answer comes from a comprehensive reading of the relevant court rules.
MCR 5.901 provides:
(A) Scope. The rules in this subchapter, in subchapter 1.100 and in rule 5.113, govern practice and procedure in the family division of the circuit court in all cases filed under the Juvenile Code. Other Michigan Court Rules apply to such juvenile cases in the family division of the circuit court only when this subchapter specifically provides.
(B) Application. Unless the context otherwise indicates:
(1) MCR 5.901-5.927, 5.980 and 5.991-5.993 apply to delinquency proceedings and child protective proceedings;
*208 (4) MCR 5.961-5.974 apply only to child protective proceedings [.]
None of these provisions permits intervention in child protective proceedings. Nor does any of them reference another court rule that permits it. But, in the end, Mr. Heier can identify no court rule under which he could intervene and, as a consequence, the trial court was required to deny his motion.
IV. CONCLUSION
While, applying the court rules, the trial court did not err in denying Mr. Heier’s motion to intervene in the child protective proceedings, I am troubled by the result.
I believe our court rules should be amended to allow a putative father to intervene in a child protective proceeding if he is able to raise a legitimate question about paternity.[3] Dna testing now can determine paternity with relative ease, speed, and accuracy. The juvenile code presumes that a child’s interests are best served when he is in the care of a fit parent. These considerations support a rule change and would give putative fathers the opportunity for a fair hearing in the future.

 MCL 722.711 et seq.

 401 Mich 629; 258 NW2d 461 (1977).

 I recognize that it may be necessary for the Legislature to amend the juvenile code to allow intervention in these proceedings. Accordingly, to the extent necessary, I would also solicit the Legislature to amend the juvenile code to provide for such intervention.